## Louisville & N. R. Co. v. Craig

November 16, 1948.

As Modified and Extended on Denial of

Rehearing April 19, 1949.

C. S. Landrum, C. E. Rice, Jr., H. L. Bryant, and J. C. Baker for appellant.

G. E. Reams for appellee.

Opinion of the Court by Van Sant, Commissioner
—Reversing.

The appeal is from a judgment of the Harlan Circuit Court in the sum of Five Thousand Dollars ($5,000) in favor of appellee for the death of his wife, who was killed when struck by a passenger train at about 1:00 o'clock P.M. October 21, 1946, at a public crossing over appellant's track within the corporate limits of Wallins, a city of the sixth class. The railway runs north and south over the crossing, and consists of two tracks: One for northbound, the other for southbound, trains. The train which struck the deceased was travelling in a northerly direction on the northbound, or easterly, track. She had left the home of her daughter-in-law about 12:45 P.M. and at the time of the accident was walking from west to east over the crossing. The highway crosses the railroad as the latter rounds a curve, the northbound track being on the inside of the curve. An electric wig-wag signal is located on the east side of the railroad right of way and immediately north of the crossing. The signal consists of a metal banner, a bell, and a red electrically illuminated light. The signal commences operating when a northbound train reaches a point fifteen hundred feet south of the crossing, and it continues in operation until after the train passes over it. All witnesses testified that the signal at the crossing was in operation at the time of the accident. All witnesses, except appellee and one other, who testified concerning the whistle of the approaching train, stated that the whistle was sounded for the crossing. Among those so testifying were two travelers who had halted at the crossing to permit the train to pass. Appellee, husband of the deceased, testified that he was one-half mile away and did not hear the crossing whistle; Charlie Hensley testified that he did not recall whether the crossing signal was given. There is positive testimony that the bell on the engine was rung, although some negative testimony was offered to refute this fact. Appellee's decedent crossed the track in front of the train. The engineer observed her before she reached the track, but his view was blocked by the engine when it was approximately one hundred and fifty feet from the crossing. At the time he saw her, he was too close to stop short of the crossing. Two witnessses testified that at the

time of the accident they were playing cards on a hillside to the west of the crossing. They stated that the deceased stooped over when she reached the east most rail of the northbound track, and immediately was struck by the train. One of the travelers, who had halted his team of goats at the crossing to await the passing of the approaching train, testified that the deceased proceeded across the tracks despite the fact that the crossing bell was ringing; that he watched her until the engine obstructed his view; that she did not stoop nor hesitate; and that she was walking slowly across the tracks when he last saw her. Several witnesses testified that there were worn places and holes on the crossing, and that these defects had been there for a sufficient period of time for the railroad company to have learned of their presence.

By the instruction offered, appellee relied on but three of his allegations of negligence, to wit: (1) That the train failed to give warning or notice to the public of its approach to the crossing; (2) that the operators of the train failed to keep a proper lookout; and, (3) that the company failed to maintain the crossing in a proper, safe, or lawful manner, and had permitted it to become and remain out of repair, as a direct result of which deceased's foot was caught in one of the defects and she was unable to extricate herself before she was struck.

As grounds for reversal appellant advances several contentions, the first of which is that the Court erred in overruling its motion for a peremptory instruction. In view of our conclusion it is unnecessary for us to consider the other contentions.

The parties stipulated that the crossing on which the accident occurred is within the city limits of Wallins. Thus, by its express provisions, the statutory signals provided for in KRS 277.190 are not applicable. The section provides that such signals shall be given in a city as are required by the legislative body thereof. No ordinance of the City of Wallins prescribing the signals to be given at railroad crossings within its limits was introduced in evidence. Thus it was incumbent on appellant only to give warning as required by the common law. As stated in the case of Louisville & N. R. Co.

v. Curtis' Adm'r, 233 Ky. 276, 25 S.W.2d 398, the common law duty imposed upon a railroad is that it give reasonable and timely warning to the public of the approach of its trains. The evidence introduced to establish a breach of this duty was the testimony of the husband of the deceased and of one of the witnesses playing cards on the nearby hillside. The first of these witnesses testified that he was at a coal mine one-half mile distant and to the north of the crossing, and that he did not hear the bell ring or the whistle sound before the train reached the crossing, although he clearly heard the "backing up" signal after the accident. The other witness merely stated that he did not recall whether the whistle was blown before the train reached the crossing, although he did state that the crossing bell was ringing. No witness denied that the crossing signals were in full operation. It is unnecessary for us to determine whether the evidence for appellee concerning the blowing of the train's whistle and the ringing of its bell was sufficient to amount to more than a scintilla, because we definitely are of the opinion that the common law rule in respect to the requirement of railroads to give reasonable and timely warning of approach of its trains was met by constructing and maintaining in working condition the wig-wag signal at the crossing in question.

There is no evidence in the case from which the jury could infer that those in charge of the train were not keeping a lookout ahead. The engineer admitted seeing the deceased previous to the time the engine blocked his view, but at that time she was not in a position of danger, and, as stated, a reasonable and timely warning of the train's approach was being given; consequently, he had the right to rely upon her observing and heeding the warning.

The case now resolves itself into whether appellee introduced any evidence of probative value in support of the contention that the deceased came to her death by reason of being caught in a defect at the crossing and from which situation she could not extricate herself in time to avoid the accident. The only testimony relied on in support of this contention is that given by the two witnesses who testified that they were playing cards on the side of a nearby hill to the west of the crossing. The only competent testimony they offered in sup-

port of this contention shows merely that the deceased was in a stooping position at the time she was struck by the train. Each ventured a guess which can be given no weight, that it ''looked like she had her foot hung'' and ''It looked like she was trying to get her foot loose.'' The purpose of her stooping, if she did stoop, and the witness nearest to the deceased testified that she did not up to the time the engine was so close as to block his vision, may have been to tie a shoe, retrieve a lost package or bill or coin, or to pick up some other object which may have struck her fancy. It is apparent, therefore, that the reason for her stooping, if such occurred, enters into the realm of pure speculation, upon which it universally has been held a verdict may not be based. Wintuska's Adm'r v. Louisville & N. R. Co., 20 S.W. 819, 14 Ky. Law Rep. 579. But it is insisted that the condition of one of Mrs. Craig's shoes, which was found in a field approximately seventy-five feet (75') from the railroad track, supports appellee's theory that the deceased was caught and held on the track by one of the defects on the crossing. The shoe was introduced in evidence and is before us as an exhibit. The heel was partially pulled from the sole of the shoe to which it was attached. The fact that the shoe was thrown a distance of seventy-five feet (75') from the railroad track would indicate that it was not fastened in a defect in the crossing sufficiently to hold the deceased in a position of danger. In addition there was no abrasion or other sign on the heel which would indicate that it came in contact with such a defect. Our experience with cases of this nature has taught us that it is not unusual for a shoe of a victim of an accident to be thrown free of the body upon impact with a train or other heavy vehicle, but we hardly see how this could have occurred if the shoe was fixed so fast as to hold its wearer on the railroad tracks. Our examination of the shoe further shows that the heel was not securely attached to the sole at any time, the two being held together merely by short cobbler tacks, only two of which had been pulled free of the sole at the time it was found by the witness introducing it. Thus the evidence shows that if either of the shoes of the deceased was caught it was not the one presented in evidence.

We are of the opinion appellee failed to show that any negligence on the part of appellant was the proxi-

mate cause of the accident; consequently, the Trial Court should have sustained appellant's motion for a directed verdict in its favor.

The judgment is reversed, with directions that it be set aside and appellant granted a new trial, at the conclusion of which, if the evidence is substantially the same, the Court will direct the jury to return a verdict in appellant's favor.