# Kernek v. Masterson.

January 10, 1950.

Marvin J. Sternberg and Horace E. Tabb for appellant.

J. E. Wise for appellee.

JUDGE CAMMACK—Reversing.

The appellee's son, Tommy Masterson, was a student pilot at a flying school operated by the appellant. While on a solo flight a plane flown by Masterson crashed, resulting in his death. This action was instituted by his administratrix on the theory that the crash was occasioned by the negligent failure of Kernek to properly refuel the plane after a previous flight.

From a judgment of $8,000 Kernek has appealed, seeking its reversal on the grounds that: (1) the court

erred in failing to direct a verdict in his favor; and (2) the court erroneously instructed the jury.

Masterson's brother said he was at the field on the day of the accident. He, the deceased, and Kernek left the office at the same time after the plane had come in from its previous flight. The witness stated that he heard Kernek tell his brother that there was sufficient fuel in the tank for a 45 minute flight, but that the plane had been in his line of vision since its previous landing and that it had not been refueled. The witness went to the scene of the accident immediately upon notification and although the gasoline tank had been split open, he found no evidence of gasoline having been spilt.

Mr. and Mrs. Phillips, within 50 yards of whose home the plane crashed, testified that it approached their house at a low altitude. While the plane was over the house its engine spluttered and fluttered, similar to that of an automobile which is running out of gasoline. The plane turned sharply while over the house and did not pass completely over it. Both witnesses said that when the plane crashed its motor was roaring loudly.

Mr. Goff stated that the plane flew over his home shortly before it crashed. As it approached his house at a good altitude and speed, the motor spluttered and quit and the plane glided away toward the Duff place, which was about three-quarters of a mile distant. The witness went to the scene of the accident and stated that he neither saw nor smelled gasoline, although he dug up some dirt from beneath the motor.

Mr. Duff, who lived about 400 yards from the scene of the crash, saw the plane on its final flight and heard the crash although he could not see it. He stated that the motor "cut in and cut out." Upon arriving at the scene within a few minutes after the crash, the witness observed that the gasoline tank was burst, but that there was no indication of gasoline having been spilt.

Several other persons who visited the scene of the accident testified that there was no indication of gasoline having been spilt, although the tank had burst open.

It is the appellant's theory that the deceased met his death as the result of his own negligent operation

of the plane. Kernek stated that the deceased flew the plane for 45 minutes in the forenoon and that Vearl Henderson flew it that afternoon prior to the fatal take-off. The appellant serviced the plane prior to Masterson's departure, which included checking oil and gasoline and putting in five gallons of gas. At the time the deceased left the airfield the tank registered three-quarters full, which was about ten gallons. Kernek helped Masterson get into the plane and, upon being signaled to do so, cranked the propeller. He stated there was enough fuel in the plane for a two hour flight. He told the pilot the plane was ready and serviced for flight. He stated the students were instructed always to check their ship before departing and were instructed as to minimum safe altitudes, as provided by air regulations. Kernek testified that the plane had always given satisfactory service. On the day following the crash Kernek and a Kentucky Aeronautics Inspector examined the wreck. Kernek dug some dirt from under the engine and it smelled of gasoline. The gasoline tank was split open in about three places. The appellant stated that such could not have happened without there being gasoline in the tank to create a centrifugal force. He said that had there been no gasoline the tank would have dented and crumpled.

Mr. V. R. O'Brien, an employee of the Department of Aeronautics of Kentucky, made an investigation of the crash on the following day. The gasoline tank was split open. This witness did not examine the dirt. Mrs. Phillips told the investigator that at the time of the crash the engine was running wide open. He stated it was evident, without testimony from anyone, that the motor was running when the plane crashed, as the wooden propeller was splintered, pieces being found as far away as 150 feet. The witness gave as his opinion that the plane was being flown at a low altitude and the pilot attempted a sharp turn with the power on and stalled, whereupon he had attempted to open the throttle and regain flying speed, but he was too close to the ground and did not have time to straighten the ship out.

Mr. Lewis Seawell, who holds a commercial license, was at the field on the day of the accident. He stated that he saw Kernek go to the pump and fill a can with

gasoline, which he put into the plane, and that this was done in the presence of Masterson.

Mr. W. T. Sullivan, an instructor for Kernek, was at the airport on the day of the crash. He stated that he had instructed Masterson to stay above 1500 feet when engaged in acrobatic maneuvers, above 1000 feet when over towns and at all times above 500 feet. He said further that when a plane is doing a "buzz job" the engine can not be heard on the ground for it is throttled all the way back. Having the engine thus idling and then going to full power suddenly would produce a roar. The day following the accident the witness dug up some dirt beneath the motor and it was saturated with gasoline.

Mr. Vearl Henderson was at the airport on the day of the crash. He said he brought the plane in about five minutes before Masterson took off on the fatal flight. After he completed his flight the plane was brought in and refueled at the pumps, but he did not remember who refueled it. The witness had flown the plane for one hour and forty-five minutes prior to Masterson's take-off and it had functioned perfectly. He stated that a plane running out of gas would spit and flutter and quit, but that this plane had been refueled.

Mr. George Dillard, formerly an instructor for Kernek, stated that a throttled-off engine could be heard on the ground and that an airplane with the engine throttled off at a low altitude could not glide a great distance. He stated that Masterson was instructed always to precheck a plane which he was going to fly. On the day of the crash he examined the ground and found it to be saturated with gasoline. The witness was on a crash crew while in the army, whose duty it was to take care of planes that crashed, and from such experience he knew that you can not see gasoline on the ground after a crash unless the ground is wet. He said it takes only a few seconds for aviation gasoline to disappear from dry ground. He said also that Duff and Goff had told him that Masterson was "buzzing," which tended to impeach the testimony of those witnesses.

It is our belief that the evidence renders inescapable the conclusion that there was fuel in the tank at

the time of the crash. It is true that the appellee introduced testimony refuting the claim that the plane had been refueled prior to its takeoff and that many witnesses testified that they saw no indication of fuel having been spilt at the scene of the crash. Such evidence is unavailing, however, when it conflicts with undisputed physical facts. Russell Fork Coal Company v. Hawkins, 311 Ky. 449, 223 S. W. 2d 887. The only persons in a position to have known stated the motor was roaring at the time the plane crashed. Without question, then, the motor was being supplied with fuel. The Inspector of the Department of Aeronautics stated that the fact that splinters from the wooden propeller were found 150 feet from the wreckage demonstrated conclusively that the motor was running when the plane crashed. No attempt was made to contradict this evidence. It was established that the gasoline tank was split open and there is undisputed testimony that had there been no centrifugal force created by the gasoline within the tank, it would have crumpled inward. With the elimination of lack of fuel, the cause of the accident becomes a matter of speculation. The most logical explanation is that Masterson stalled the plane while "buzzing" and that the engine's roar was created by his futile and tardy effort to pull out of the stall. Whatever may have been the cause, it was incumbent upon the appellee to establish negligence on the part of the appellant by sufficient proof to sustain her cause of action. The jury could not by speculation supply this deficiency of proof. Louisville & N. R. Co. v. Craig, 310 Ky. 43, 219 S. W. 2d 954.

The judgment is reversed, with directions to set it aside and to grant a new trial; at which, if the evidence is the same, a verdict should be directed for Kernek.