## Craig v. Louisville & Nashville R. Co.

February 6, 1951.

J. S. Forester, Judge.

G. E. Reams for appellant.

J. C. Baker, H. L. Bryant, and C. S. Landrum for appellee.

JUDGE MOREMEN—Affirming.

On October 21, 1946, at about 10 o'clock p. m., Mrs. Beckie Craig was killed when struck by a Louisville & Nashville Railroad Company's passenger train at a public crossing within the corporate limits of Wallins, Kentucky. Frank Craig (who, herein will be called plaintiff), administrator of the estate of Beckie Craig, seeks to recover damages for her death.

On the first trial of this case plaintiff recovered judgment in the sum of $5000.00. Louisville & N. R. Co. (who will be called defendant) appealed to this court with the result that the judgment of the Harlan Circuit Court was reversed. Louisville & N. R. Co. v. Craig, 310 Ky. 43, 219 S. W. 2d 954. In the opinion the court gave a detailed analysis of the evidence produced at the trial, summarized the law applicable thereto, and concluded plaintiff had failed to show that any negligence on part of defendant was the proximate cause of the accident. Only those facts which are necessary to the decision will be restated here.

In the case of City of Louisville v. Redmon, 282 Ky. 1, 137 S. W. 2d 350, 351, it was said: "It has been held in numerous cases that an opinion on the former appeal of an action, whether right or wrong, is the law of the case and is binding on the parties and the court in a subsequent trial or appeal, where the facts are substantially the same as those appearing on the first appeal, and this rule applies, even though the evidence on the latter appeal may be more in detail, if it is of a cumulative nature. Saunders et al. v. Lincoln County Board of Education, 273 Ky. 701, 117 S. W. 2d 914; Snyder v. Snyder, 269 Ky. 540, 107 S. W. 2d 857; Finley v. Thomas, 280 Ky. 654, 134 S. W. 2d 243."

At the second trial, plaintiff introduced only two witnesses who had not testified at the original hearing

(in some instances, the testimony given at the first trial was read), and they were Miles Howard and Clyde Collins. Miles Howard was presented for the purpose of establishing that the railroad had failed to maintain the crossing in a reasonably safe condition. In the opinion on the first appeal, it was said: "Several witnesses testified that there were worn places and holes on the crossing, and that these defects had been there for a sufficient period of time for the railroad company to have learned of their presence." [310 Ky. 43, 219 S. W. 955.]

The testimony of Miles Howard added nothing to that which was presented by other witnesses at the first trial and was cumulative.

Clyde Collins was introduced in order to support the theory that decedent had met death because her foot had been hung in a defective place at the crossing. Witnesses were introduced at the first trial on this point, concerning whom, we said: "The case now resolves itself into whether appellee introduced any evidence of probative value in support of the contention that the deceased came to her death by reason of being caught in a defect at the crossing and from which situation she could not extricate herself in time to avoid the accident. The only testimony relied on in support of this contention is that given by the two witnesses who testified that they were playing cards on the side of a nearby hill to the west of the crossing. The only competent testimony they offered in support of this contention shows merely that the deceased was in a stooping position at the time she was struck by the train. Each ventured a guess which can be given no weight, that it 'looked like she had her foot hung' and 'It looked like she was trying to get her foot loose.' The purpose of her stooping, if she did stoop, and the witness nearest to the deceased testified that she did not up to the time the engine was so close as to block his vision, may have been to tie a shoe, retrieve a lost package or bill or coin, or to pick up some other object which may have struck her fancy. It is apparent, therefore, that the reason for her stooping, if such occurred, enters into the realm of pure speculation, upon which it universally has been held a verdict may not be based."

In order to decide whether or not the testimony of Clyde Collins removes plaintiff's theory of the case

from the realm of speculation, it is obligatory that we quote from the transcript at some length. On direct examination Collins showed a marked reluctance to say that decedent's foot was caught. He stated:

"Q. 18  Where was she when you first saw her? A. It looked to be, she was hung on the railroad crossing, one foot on the rail and the other out.

"Q. 19  What was she doing at the time you saw her which caused you to see her, she looked to have her foot in the crossing?  A. Looked to me like she was pulling at one of her feet. I wouldn't be safe to say.

\* \* \* \* \*

"Q. 34  Did her actions indicate she had her foot hung on the crossing?  A. Yes.

"Q. 35  Did you see her feet, either one of them? A. She was standing in this position, and she was working at one of her feet. (Witness indicates.)

"Q. 36  Did you see her feet, either one of them? A. No.

"Q. 37  She was working with one of her feet? A. She looked to be.

"Q. 38  She was working at it?  A. She was standing in that position with her hand on her leg, she could have been.

"Q. 39  Do you know of anything else that would have caused her to be in a stooped position?  A. No sir. I didn't know her at the time.

"Q. 40  Did you see anything on the crossing she might be trying to pick up like a package?  A. No, sir.

\* \* \* \* \*

"Q. 63  You could see this woman's hands?  A. That's right.

"Q. 64  If her foot had been on top of the surface of the crossing, could you have seen her foot? Defendant objects.  A. I'm not positive.

"Q. 65  You didn't see her foot?  A. I'm not positive I seen her foot, but she was working with one leg."

If we had before us only the testimony given in

chief we would have little trouble in forming an opinion, but under the lash of persistent cross examination, the witness became considerably stronger when he made the following statements:

1. "She could have got loose if she hadn't been hung; she could have got out of the way before the train hit her, if she hadn't been hung."

2. "No, sir, I don't say that. If she hadn't been fastened some way she could have got off."

3. "She knew the train was coming she couldn't get loose."

The record discloses that the final questions on this point were propounded by the court:

"Court: Do you know whether she was hung or not? A. She was on the crossing pulling at her foot or leg.

"Court: Do you know whether it was hung or not? A. I don't know. She didn't get that foot on the crossing; she was hit."

Counsel for appellant, in a carefully written brief, points out that the use by a witness of such words as "it looked like," "thought," "suppose," and "believe," do not always indicate a conjecture or guess at facts, and cites (along with other cases) the case of Collier v. Commonwealth, 303 Ky. 670, 198 S. W. 2d 974, 975, wherein it said:

"It has been written that such expressions as 'I thought,' 'I suppose' and 'I believe' do not always indicate a conjecture or guess at the facts, but that such expressions are often an idiomatic or colloquial way of stating a fact according to the best judgment of the witness."

We agree that such is often the case, but it is equally true that such words are sometimes used to express their exact meaning and for the purpose of conveying the idea that the witness is giving his conclusion as to primary physical facts which he is not sure existed, but which he supposes to have existed. It is apparent from a reading of the testimony of Clyde Collins that he would have sometime during his intensive examination said, "Yes, I saw her foot caught in a defect in the

crossing," if his good conscience had not restrained and forced him to use suppositional words.

We are of opinion that the testimony given by Clyde Collins is of the same classification of that given by two witnesses introduced on this point at the first trial, is at most cumulative in nature, and that trial court was correct in instructing the jury to find for the defendant.

Judgment affirmed.