Argued July 11, reversed August 1, 1916.

## YOUNG *v.* PROUTY LUMBER CO.

### (159 Pac. 565.)

**Negligence—Contributory Negligence—Duty to Observe and Avoid Danger.**

1.   An invitee at a sawmill was negligent where he saw that a plank was about to be thrown down to a platform on which he was standing, and then looked away without taking further precautions, and was injured thereby.

> [As to what contributory negligence is and when it prevents a recovery, see note in 8 Am. St. Rep. 849.]

From Clatsop: JAMES A. EAKIN, Judge.

Department 1.   Statement by MR. JUSTICE BENSON.

This is an action by James Young against the Prouty Lumber & Box Company, a corporation, based upon the following facts:

Plaintiff is a teamster, who, at the time of the accident which was the basis of this action, was employed in hauling lumber for the City of Seaside from defendant's sawmill.   A plank 3 inches thick, 12 inches wide and 32 feet long, being dropped from the conveyor to a receiving platform about 6 feet below, struck plaintiff, breaking his leg.   A trial being had, a verdict and judgment for plaintiff resulted, from which defendant appeals.        REVERSED AND REMANDED.

For appellant there was a brief over the names of *Mr. George C. Fulton* and *Mr. Victor J. Miller,* with an oral argument by *Mr. Fulton.*

For respondent there was a brief over the names of *Messrs. Littlefield & Maguire* and *Messrs. Norblad & Hesse,* with an oral argument by *Mr. Edwin V. Littlefield.*

MR. JUSTICE BENSON delivered the opinion of the court.

1. The important question to be considered is defendant's motion for a directed verdict, which was denied by the trial court. This ruling is assigned as error. In order that the situation may be clearly understood, it should be stated that the sawmill extends east and west; the logs entering at the east side and emerging as a manufactured product at the west end. Outside of the inclosed portion of the mill upon the west a platform, which is a continuation of the mill floor, extends for about 72 feet, bearing two parallel sets of rollers or conveyors, 30 inches high, for the distribution of lumber. Upon the south side of this platform, and attached to it, is a receiving platform 3½ feet lower, to which lumber is dropped from the south conveyor for loading upon wagons. For the purpose of loading his wagon, the plaintiff had driven alongside this receiving platform, and, having placed upon it two or three planks, was waiting for others to be sawed.

We next consider the plaintiff's own testimony as to how the accident occurred. It is as follows:

"Q. To your knowledge—well, what were you waiting for on the platform?

"A. I told you half a dozen times I was waiting for that pile of lumber for me to load.

"Q. You were waiting for the mill to cut?

"A. Cut that, my plank.

"Q. These planks?

"A. Cut that plank that belongs out there on the bridge.

"Q. Well, did you know where it would come when it was cut?

"A. I supposed it came down on the platform; yes.

"Q. You knew, then, as soon as they struck a log, found a log that was of the right kind, of the right

length, this plank would be cut and rolled out on this rollway, didn't you?

"A. Yes, sir.

"Q. And you knew, after it got out on the rollway, it would be thrown down on this platform?

"A. Sure.

"Q. And you were waiting there for that?

"A. Yes, sir.

"Q. That is what you were standing there for?

"A. That is what I was standing there for.

"Q. So you could see it coming quickly?

"A. [No response.]

"Q. I say, you were waiting so you could see it come and get ready?

"A. Yes, sir.

"Q. Well, you saw this plank coming, didn't you?

"A. Yes, sir.

"Q. Sure—and you knew they were going to throw it down on the platform; you knew that is where that timber was going to be thrown, right down on the platform where you were standing?

"A. It would not go any place else.

"Q. No—well, did you see them throw it on to the platform?

"A. I see them catch hold of it; yes.

"Q. To throw it?

"A. Yes.

"Q. Did you look where they were going to throw it?

"A. Look?

"Q. Yes.

"A. I was watching them.

"Q. Did you see it come down toward you?

"A. I don't know; I thought I was plumb out of the way.

"Q. You thought you were clear out of the way?

"A. Yes.

"Q. They were right up above you, not over 7 feet from you?

"A. Gee whiz, I was away out from where they were throwing the lumber.

"Q. I understood you to say you were about 7 feet from where they were.

"A. I was at the end of the platform—where I was standing.

"Q. You were about 7 feet from the plank, and you saw them throw the plank?

"A. [No response.]

"Q. You saw the plank coming?

"A. No; I would not say I saw the plank coming.

"Q. But you saw them throw the plank?

"A. I seen the plank up there.

"Q. I say, you said you saw them throw the plank, didn't you?

"Mr. McGuire: No, sir; he did not.

"A. No, sir; I did not.

"Q. You knew they were going to throw it?

"A. Yes.

"Q. You saw them stop the plank, didn't you?

"A. Yes. sir.

"Q. Sure—and you saw Mr.—I can't think of his name—Kutcher take hold of the plank to throw it?

"A. No; Mr. Kutcher never had hold of that plank.

"Q. Who did?

"A. Grant and that tall fellow there.

"Q. Oh, yes; what's his name, Kutcher, this—that is the man?

"A. The man in the center there [indicating].

"Q. Yes; you saw that man take hold?

"A. And Mr. Grant.

"Q. Yes; Mr. Grant; and you saw Mr. Kutcher?

"A. Yes.

"Q. Take hold of the plank to throw it down, didn't you?

"A. Well, I didn't take no notice.

"Q. You tell the jury that you were standing down on this platform, waiting for this plank to be thrown on the platform—you saw it rolled out on the rollers, saw Mr. Grant take hold of it, to throw it down, and knew it was coming down, yet you didn't look to see where you were when they were throwing it—that can't be true, Mr. Young?

81 Or.—21

"A. I must have misunderstood you.

"Q. I want to be perfectly fair with you—you knew it was coming down?

"A. Yes.

"Q. You saw it come out?

"A. Yes.

"Q. And you saw Mr. Grant take hold of one end, didn't you, to throw it off?

"A. I saw him pack it over on the rollers next to him.

"Q. Yes; did the plank extend beyond the end of the rollers any?

"A. I would not say about that.

"Q. No; but you knew they were going to throw it down toward you?

"A. I knew they were going to throw it down.

"Q. Still you didn't look?

"A. No.

"Q. You didn't look?

"A. I thought I was out of the way, plumb out of the way.

"Q. You thought surely you were out of the way?

"A. Yes. sir.

"Q. So you didn't take the precaution to take the second look?

"A. No, sir.

"Q. Now, that is the truth?

"A. That is the truth, sir.

"Q. The whole truth, the square truth?

"A. As far as I know; I thought I was safe.

"Q. You thought you were in a safe place?

"A. I thought I was in a safe place.

"Q. So you didn't look at all?

"A. No."

This testimony is the clearest and strongest produced for plaintiff, and is not in any way aided or strengthened by any of defendant's witnesses. From his own testimony it seems to us perfectly clear that he knew all the conditions which existed at the time

of the accident. No notice or warning of any sort could have been given by the men handling the plank which could have enlightened him in any degree as to the impending danger, for he knew all that they knew. It is true that he was an invitee, and therefore the defendant was under obligation to use reasonable or ordinary care to keep the premises in a safe and suitable condition, so that he should not be unnecessarily or unreasonably exposed to danger. At the same time it must not be forgotten that the plaintiff is also under obligation to exercise ordinary care in the protection of his person from obvious dangers. If the servants of defendant were negligent in wrongly judging that plaintiff was in a safe place, it must follow that plaintiff was equally negligent in the same particular. His negligence and theirs were concurrent and simultaneous, and consequently the court committed error in denying the request for a directed verdict.

The judgment is reversed and the cause remanded, with directions to enter a judgment for the defendant.

REVERSED AND REMANDED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BURNETT and MR. JUSTICE McBRIDE concur.

---

Motion to dismiss allowed August 1, 1916.