### MATHIS et ux. v. TUTWEILER et al.

(Circuit Court of Appeals, Sixth Circuit. February 8, 1924.)

No. 3915.

1. Evidence ⬅️265(10)—Party held not bound as an admission by a statement made on cross-examination.

A plaintiff *held* not absolutely bound, as by an admission, by a statement made on cross-examination as to her action when placed in a dangerous position, where she later qualified the statement by saying she was not sure what she did, which under the circumstances was probable.

2. Carriers ⬅️320(10)—In action for injury to intending passenger, negligence held question for jury.

Where there was testimony that the motorman on a street car which struck and injured plaintiff could have seen, when 60 feet away, that plaintiff, waiting for the car, was in a position of danger between the car and a passing automobile, the question of his negligence *held* properly one for the jury.

In Error to the District Court of the United States for the Western District of Tennessee; J. W. Ross, Judge.

Separate actions at law by E. L. Mathis and wife against T. H. Tutweiler and another, receivers. Judgment for defendants, and plaintiffs bring error. Reversed and remanded.

Ike W. Crabtree, of Memphis, Tenn. (O. F. Mathis, of Memphis, Tenn., on the brief), for plaintiffs in error.

McKinney Barton, of Memphis, Tenn., for defendants in error.

Before DENISON, MACK, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. Plaintiffs below, plaintiffs in error here, brought separate suits for an injury to Mrs. Mathis when she was struck by the car of the Memphis Street Railway Company. The two cases were consolidated for trial. The trial court directed a verdict for defendant, at the end of plaintiff's testimony.

After dark Mrs. Mathis prepared to take a car at its regular stopping place. When the approaching car was a short distance away, she stepped off the curb down to near the track and waited. The distance from curb to rail was 12 feet. When the car was some 60 or 70 feet away, she saw that an automobile was coming rapidly alongside and then a little ahead of the car, and that if she stood back too far from the rail, she might be hit by this machine. According to her testimony, she became confused. She was hit, though slightly, by the fender of the machine, and was also struck by the front corner of the street

car and seriously injured. The automobile driver was made a joint defendant, but was later dismissed by voluntary nonsuit, after verdict had been directed in favor of the street railway company. The witnesses who testified on the vital point were Mrs. Mathis and a passenger standing behind the motorman in the front vestibule. The direction of verdict was based upon the testimony of Mrs. Mathis that to get out of the way of the automobile she stepped forward just before she was struck. In view of her obvious danger, a defense of contributory negligence, tendered by the answer, was withdrawn upon the trial. It was the theory of the defendant, approved by the trial court, that there was no evidence of negligence on the part of the motorman, because Mrs. Mathis was standing in a safe place, and only stepped forward into danger when it was too late for him to avoid hitting her.

[1] If the above-stated testimony of Mrs. Mathis were all that appeared, this result would seem inevitable; but it is not all. A party plaintiff in such a case is not necessarily absolutely bound by a statement, in the nature of an admission, made on cross-examination, which is inconsistent with the direct testimony, or with other facts and circumstances. In direct testimony, Mrs. Mathis had said she did not move from the safe position in which she first stood. On cross-examination, she said she stepped forward. Finally she said she might have stepped forward, but did not know what she did do. The latter statement is so reasonably probable that a jury would have a right to accept it, and not to hold her to the temporary admission. The passenger says, among other things, that he thinks she was standing in the danger zone from the time she was first seen by him, about 60 feet away. It also appears that automobiles were parked by the curb just ahead of this stopping place, so that the automobile traffic would necessarily swing in along here and impart danger to the usual position of a waiting passenger.

[2] Upon this testimony, we think there was a case for the jury upon the proposition that, at a distance of 60 feet, the motorman saw, or should have seen, Mrs. Mathis, and should have appreciated that she was either in a position of danger, or that under the threat of the approaching automobile she was likely to move forward to the rail, so that it then became incumbent upon him to take every reasonable precaution and make every reasonable effort to stop.

Defendants next urge that there was no evidence tending to show that the motorman, even using extreme care, could have stopped substantially sooner than he did. However probable it may be that he did his best, we think it an unsafe inference to adopt, as one of law from the testimony. The distance from the point where the car was when the passenger saw her standing, waiting by the rail, and the point where the front end of the car did stop, was 100 feet. The passenger on the platform and others in the car testify that the stop was made in the usual manner, and at the point where it would have been made, had there been no emergency. The passenger on the platform says that after he saw Mrs. Mathis, and after the motorman cut off the current, he ran 25 feet before he put on the brake, and then applied the brakes only in the usual manner, with no reversing or emergency effort. The car was running on a city street, it had stopped only a block away, and there is enough common knowledge of such situations, so that a con-

clusion by the jury that, with diligence in the face of this danger, the car might have stopped substantially sooner than it did, could not be set aside as having nothing to support it. Of course, it was not essential that the car should have been stopped before the front end reached the place where Mrs. Mathis was. A substantial slowing would have created another and safer situation for her.

We may call attention to the distinction, settled in this circuit, that sometimes a case must be submitted to the jury, even though the trial judge feels that a verdict for the plaintiff would be set aside by him, because not supported by the necessary preponderance. The issue of preponderance he can try, upon a motion for a new trial, and decide according to his sound discretion, but, upon a motion to direct, the criterion is whether he would be compelled to grant a new trial as a matter of law, and not as a matter of discretion. Mt. Adams Co. v. Lowery (C. C. A. 6) 74 Fed. 463, 470, 20 C. C. A. 596; Nelson v. Ohio Co. (C. C. A. 6) 188 Fed. 620, 629, 112 C. C. A. 394; Richards v. Mulford Co. (C. C. A. 6) 236 Fed. 677, 678, 679, 150 C. C. A. 9.

Our conclusions make a new trial necessary, and we have no occasion to consider the force of the Memphis ordinance and the testimony that the car was running at a rate above the prescribed maximum.

The judgment below is reversed, and the case remanded for a new trial.