Argued February 28, 1957, reversed and remanded January 8,
petition for rehearing denied March 19, 1958

# BOCKMAN *v.* MITCHELL BROS. TRUCK LINES

320 P. 2d 266

*Howard K. Beebe*, Portland, argued the cause for appellant. With him on the brief were Maguire, Shields, Morrison & Bailey, Portland.

*Carlton Reiter*, Portland, argued the cause for respondents. With him on the brief were Paul R. Harris, Stern, Reiter & Day, Portland.

Before PERRY, Chief Justice, and ROSSMAN, BRAND and McALLISTER, Justices.

McALLISTER, J.

The plaintiff, Henry Bockman, brought this action against Mitchell Bros. Truck Lines, Inc., a corporation, to recover damages for personal injuries sustained by plaintiff when the boom of a crane operated by defendant struck an electric power line while the parties were engaged in loading metal pipe onto a truck. The jury returned a verdict in favor of plaintiff for $9,350 and from the judgment based thereon, defendant appeals.

Defendant contends that plaintiff was guilty of contributory negligence as a matter of law and for that reason, the court erred in failing to grant defendant's motion for a nonsuit and for a directed verdict.

Plaintiff and his partners, Orval LaCross and William LaCross, who were scrap metal dealers, had purchased some used metal pipe which was lying along the Lusted road east of Gresham in Multnomah county. A large water main had been replaced and the old pipe was strung along the north side of the roadway for several miles. For about a week prior to May 5,

1953, plaintiff and his partners had been using a small crane to load the pipe onto trucks. The small crane proved unsatisfactory and plaintiff arranged with the defendant to furnish a larger crane and an operator to load the pipe and trucks and drivers to haul the pipe to Portland. Defendant was to receive an hourly rental for the use of the crane including the operator and a fixed amount per ton for the hauling.

Defendant's equipment was first used on May 5, 1953, and plaintiff was injured at about 3:00 o'clock in the afternoon of that day. When work started that morning an attempt was made to load some pipe which had been piled in a field but because both the crane and truck kept getting stuck, it was decided to move the equipment onto the road. During the remainder of the day pipe was loaded from along the road with both the crane and trucks standing on the road.

There was an electrical transmission line along the north side of the road with two crossarms on each pole. The upper crossarm was fastened near the top of the pole and carried near each end a bare electrical wire. The wire on the side toward the road carried a high voltage of electricity. The wire on the other end of the crossarm was a neutral wire. The lower crossarm carried on each side thereof a number of telephone wires. The telephone wires carried a low voltage of electricity and were harmless even upon direct contact. The distance between the two crossarms is not disclosed by the evidence.

The photographs in evidence indicate that the pipe was lying adjacent to the road approximately underneath the telephone and power lines. The crane was mounted on a truck chassis and when the accident occurred, was standing at the north edge of the im-

proved portion of the roadway. The truck then being loaded was also standing on the road immediately to the west of the crane. In picking up the pipe it was necessary to swing the boom of the crane to the north toward the wires. The evidence does not disclose the height of the wires above the ground nor the length of the boom. The photographs clearly show, however, that the boom was long enough to reach the charged electrical wire on the upper crossarm.

The cable with which the pipe was lifted was fitted with hooks to be attached to the pipe. The plaintiff was helping with the loading operations and occasionally hooked the cable to the pipe. When plaintiff was injured he was standing on the ground near a piece of pipe waiting as the crane operator swung the boom around and lowered the cable so that plaintiff could hook the cable to the pipe. As plaintiff was looking up and reaching for the hooks the boom struck the "hot" wire and plaintiff suffered a severe shock which rendered him unconscious and caused the injuries of which he complains.

In contending that plaintiff was negligent as a matter of law, defendant relies on the following rule stated in *Carroll v. Grande Ronde Elec. Co.*, 47 Or 424, 443, 84 P 389:

> "* * * the rule of law is that one who voluntarily assumes a position of danger, the hazards of which he understands and appreciates, cannot recover for an injury from a risk incident to the position: Fitzgerald v. Connecticut River Paper Co., 155 Mass. 155 (29 N. E. 464, 31 Am. St. Rep. 537); Robinson v. Manhattan Ry. Co., (Com. Pl.) 25 N.Y. Supp. 91."

Whether plaintiff was negligent as a matter of law must be decided primarily on the basis of plain-

tiff's own testimony. We will therefore first summarize the testimony given by plaintiff before quoting some of the pertinent portions thereof from the record. Plaintiff testified in substance:

(a) That during the morning he heard the LaCrosses say that "they was getting a little tingle and that we should watch those wires, and we went over and warned the crane operator about it."

(b) That plaintiff himself warned the crane operator about keeping out of the wires "once or twice" in the morning and again "about one time" in the afternoon.

(c) That "practically the whole morning we had to tell him, we had to warn him to keep out of the wires."

(d) In referring to the number of times that the crane operator had been warned about swinging the boom into the wires, plaintiff said, "I gave him a figure of a dozen times but that figure meant between all of us, LaCrosses and Ed Zeller and myself. That is what I meant when I said a dozen times."

(e) That plaintiff warned the crane operator to keep out of the wires out of concern for his life and the life of the others around there.

(f) That on several occasions when the boom was caught between the wires "we wouldn't touch it because the boys previously in the morning got shocked by it."

(g) That at times when plaintiff and the others saw the boom getting close to the wires, "we dropped the cable and we run away, back away from there."

(h) That after these warnings had been given the crane operator "continued on the way he had handled all the others."

Before quoting from the testimony, we point out that plaintiff had testified at a prior trial of this case which resulted in a mistrial before the case was submitted to the jury. The references to plaintiff's testi-

mony in a deposition refer to his testimony at such prior trial. Concerning the number of times that the operator was warned, plaintiff testified in part as follows:

"Do you remember giving this testimony in your deposition, page 27: 'How many times in the morning did he get hooked up in the wires?

"'Answer: Practically the whole morning we had to tell him, we had to warn him to keep out of the wires.'

"And further on that testimony, further on the same page: 'Many times he was caught in between the wires with the boom, and we wouldn't touch it because the boys previously in the morning got shocked by it.'

"Do you remember giving that testimony? A. Yes, sir.

"Q. And you remember those occasions now, do you not? A. Yes, sir.

"Q. So that many—on many occasions that morning his boom was caught up in those lower wires? A. Several occasions.

"Q. Several occasions. And you remember that now? A. Yes."

The testimony of plaintiff concerning his reason for warning the operator of the crane included the following:

"Q. And that warning was to keep out of the wires? A. Yes.

"Q. And the reason you did that was for—was out of concern for your life and the life of the others around there; that is right, is it not? A. Yes, sir."

Concerning his appreciation of the danger involved, plaintiff testified as follows:

"Q. Now, referring back to your testimony on page 29: This is preliminary: What did you say on the occasions when you did warn him? 'Watch

her; you are hitting the wires.' You remember that testimony? You remember that? A. Yes, sir.

"Q. And then the question: 'And when you saw it getting close to the wires, you would drop the cable also?' 'We dropped the cable and we run away, back away from there.' Do you remember giving that testimony?

"A. Yes, sir. I remember giving that but when I said 'we', I wasn't just speaking for myself, I was speaking for the other boys as well.

"Q. All of you? A. Yes.

"Q. You would all drop—when you would see it getting close in there on several occasions, on the occasions of that particular day—I'm not speaking about this time when you got, when you actually got the shock, but on other occasions when you saw it coming near the wires, would you drop the cable and run back from there? A. Yes."

Concerning the effect of the warnings on the conduct of the crane operator, plaintiff testified as follows:

"Q. And after these warnings were given him about getting too close to the wires, he continued on the way he had handled all the others; is that right? A. That's right, sir."

The rule quoted from *Carroll v. Grande Ronde Elec. Co.*, supra, is stated in 1 Prosser, Torts (2nd ed) 303, § 55, in the following language:

"The defense of assumption of risk rests upon the plaintiff's consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of harm from a particular risk. Such consent may be found:

"* * * * *

"(b) By implication from the conduct of the parties. When the plaintiff enters voluntarily into a relation or situation involving obvious danger, he may be taken to assume the risk, and to relieve the defendant of responsibility. Such implied as-

sumption of risk requires knowledge and appreciation of the risk, and a voluntary choice to encounter it."

We think the conduct of a plaintiff who voluntarily assumes a position of known risk in a case such as this is properly called contributory negligence. We will not enlarge this opinion by considering whether it is technically precise to also describe it as assumption of risk. Some decisions and texts do so but the use of that term has not changed the standards by which the conduct is measured. We refer those interested in further pursuing the subject to *Hunt v. Portland Baseball Club*, 207 Or 337, 296 P2d 495, Prosser, Torts (2nd ed) 303, § 55 and 2 Restatement, Torts 1230, § 466.

Although the opinions contain no reference to the rule stated in the Carroll case, the principle embodied therein has been frequently applied by this court. See for example *Young v. Prouty Lumber Co.*, 81 Or 318, 159 P 565; *Borgert v. Spurling et al.*, 191 Or 344, 230 P2d 183; and *Adair, Adm'x v. Valley Flying Service*, 196 Or 479, 250 P2d 104. In the Young case the plaintiff was waiting for a plank to be thrown onto the platform on which he was standing and was injured by the plank. In the Borgert case the plaintiff assumed a position of danger on the highway at night when the highway was substantially blocked by his car and another car parked along side. In the Adair case, the plaintiff voluntarily accepted a ride in an airplane operated by an obviously intoxicated pilot. Although these cases presented entirely different factual situations, it was held in each that the plaintiff had been negligent, as a matter of law, in voluntarily assuming a position of danger with knowledge of the risk. See also *Hunt v. Portland Baseball Club*, supra, where a

companion rule based on the same principle was applied to a spectator at a baseball game.

We do not need to determine here whether the plaintiff must in every case have actual knowledge of the risk or whether under certain circumstances such knowledge may be implied. It is sufficient for this case to say that the rule of the Carroll case must be applied here if plaintiff (a) had knowledge of the risk, (b) understood and appreciated the hazard and (c) voluntarily assumed a position of danger. We think that all of these essential elements of contributory negligence were established beyond question by plaintiff's own testimony.

The plaintiff knew that in order to pick up the pipe it was necessary to swing the boom toward the wires. Plaintiff knew that in spite of repeated warnings, the crane operator had continued to swing the boom into the wires. Plaintiff's appreciation of the hazard involved is shown conclusively by his testimony that the warnings were given by him out of fear for his life and the lives of the other men. Plaintiff's understanding of the hazard is further proved by his testimony that he at times dropped the hooks and ran back when he saw the boom swing toward the wires. It was established by his own testimony that plaintiff, with knowledge and appreciation of the risk, voluntarily continued to engage in the loading operation, assumed a position along side the next piece of pipe to be lifted and reached up for the hooks while the boom was swinging toward the wires.

■ The question of whether defendant's motion for a directed verdict should have been granted must be considered in the light of the rule that contributory negligence becomes a question of law only when reasonable men can draw from the facts the sole inference

that the negligence of the plaintiff contributed to his injury. If reasonable men may draw different inferences from the facts, the question is for the jury. See *Martin v. Harrison,* 182 Or 121, 180 P2d 119, 186 P2d 534; *Pritchard v. Terrill,* 189 Or 662, 222 P2d 652, 25 ALR2d 358; and *Borgert v. Spurling et al.,* supra.

█ In considering the testimony of the plaintiff in this case, we see no room for differences of opinion. How can there be differences of opinion about questions which have been answered completely and finally by plaintiff himself? Can we speculate about his knowledge of the risk when plaintiff has told us he warned the operator out of fear for his life? Can we differ about his appreciation of the risk when plaintiff has testified that earlier in the day he dropped the hooks and ran when he saw the boom swinging toward the wires? Plaintiff has eliminated all question as to the position of danger assumed by him when he was injured. Under these circumstances we are satisfied that plaintiff was negligent as a matter of law.

█ We must next determine whether plaintiff is precluded from recovery by his own testimony or whether he is entitled to the benefit of other evidence in conflict therewith. It is a well established rule that plaintiff on a motion for directed verdict is entitled to the benefit not only of his own testimony but also of all evidence favorable to him, including that introduced by defendant, considered in the light most favorable to plaintiff. See *Finn et al v. S. P. & S. Ry. Co.,* 194 Or 288, 241 P2d 876, and *Doty v. Southern Pacific Co.,* 186 Or 308, 207 P2d 131. But for the reasons hereinafter set out, this rule does not aid the plaintiff in this case.

The question as to when the testimony of a party

is binding upon him as an informal judicial admission, is one upon which the courts have expressed divergent views. In the recent case of *Morey, Administratrix v. Redifer et al.*, 204 Or 194, 264 P2d 418, 282 P2d 1062, this court applied the following rule:

"* * * When a party to an action or suit stipulates or testifies deliberately to a concrete fact, not as a matter of opinion, estimate, appearance, inference, or uncertain memory, but as a considered circumstance of the case, his adversary is entitled to hold him to it as a judicial admission. If no mistake is claimed or shown, the party so stipulating or testifying to a concrete fact cannot have the benefit of other evidence tending to falsify it. Valdin v. Holteen and Nordstrom, 199 Or 135, 144, 260 P2d 504; Note, 169 ALR 798, 800."

This problem was the subject of an excellent opinion in *Harlow v. Laclair*, 82 NH 506, 136 A 128. In considering the rule that the plaintiff is entitled to the benefit of all of the testimony, Mr. Justice Branch precisely stated the problem as follows:

"Does it follow from this rule that a plaintiff of average intelligence, in full possession of his faculties, who testifies to facts peculiarly within his knowledge, which, if true, utterly destroy his case, has a right to go to the jury and seek a verdict based upon a finding that his version of the facts is false? * * *"

After referring to the decisions from other jurisdictions and a statement of the circumstances which should be considered in such a case, the opinion reaches the following conclusion:

"If a party's testimony consists only of a narrative of events in which he participated or which he observed, there is an obvious possibility that he may be mistaken like any other witness. In such a situation, if other witnesses give a different ver-

sion of the occurrence, his testimony must be weighed with theirs, and he will not be concluded by his own statements. But, when a party testifies to facts in regard to which he has special knowledge, such as his own motives, purposes, or knowledge, or his reasons for acting as he did, the possibility that he may be honestly mistaken disappears. His testimony must be either true or deliberately false. To allow him to contradict his own testimony under these circumstances would not be 'consistent with honesty and good faith.' Whether his statements be true or false, he will be bound by them, and possible contradictions by other witnesses become immaterial. He will not be allowed to obtain a judgment based on a finding that he has perjured himself.

"The effect of these considerations may be summarized as follows: If a party's mental faculties are undeveloped or impaired, if his comprehension of his testimony is doubtful, if it relates to objective matters about which he may be mistaken, and he is contradicted by other witnesses, or if his statements are inconclusive, the effect of his testimony may be for the jury. But when a man of mature years and unimpaired mentality testifies understandingly and definitely to facts peculiarly within his knowledge, any rational conception of justice demands that he be judged by what he says."

Plaintiff recognizes the predicament in which he has placed himself by his own testimony but argues that he is entitled to the benefit of other evidence to rescue him from that position. He relies on the testimony of two truck drivers who swore that they heard no warnings given to the crane operator and on the testimony of the operator himself who denied receiving any warning about the wires except the following:

"A. I believe one time when we were attempting to drag a piece of pipe out so we could load it

on the truck, that the boom did come in contact with a wire or near it, I can't remember which.

"Q. Did someone complain of a tingling at that time?

"A. I believe one of the LaCrosse boys or Mr. Bockman complained that he got a tingle, but they jokingly laughed it off, said it—couldn't get one out of that, that was just the telephone wires."

Plaintiff cites *Cox v. Jones*, 138 Or 327, 5 P2d 102 and there is dicta in the opinion which tends to support his position. The case involved a typical collision of motor vehicles at a street intersection. The plaintiff testified that she entered the intersection at a lawful rate of speed and saw defendant's truck approaching from her right but believed that she had ample time to cross in front of the truck and was nearly across the intersection when her car was struck. Other witnesses for the plaintiff estimated that plaintiff was traveling faster than her own testimony indicated. It was contended that a verdict should have been directed for the defendants because "plaintiff herself admitted that she saw the defendant's truck approaching, and observed the speed at which it approached and the proximity of defendant's truck to the intersection; and that the testimony in behalf of plaintiff discloses that plaintiff was operating her automobile at a speed in excess of 15 miles an hour." The court decided that the question of plaintiff's negligence was for the jury.

We think the decision was obviously proper and that the court in effect merely applied the rule that in considering a motion for a directed verdict, plaintiff is entitled to the benefit not only of his own testimony but also of all evidence favorable to him considered in the light most favorable to plaintiff. The opinion, however, quoted from *Wiley v. Rutland R. Co.*, 86

Vt. 504, 86 A 808, which held in effect that an admission made by a party as a witness on the trial is not "in the nature of a judicial admission having conclusive effect in law." We think this reference to *Wiley v. Rutland* was entirely unnecessary to the decision of the Cox case. We have read with care the testimony of the plaintiff quoted in the opinion and find nothing therein in the nature of an informal judicial admission. Although the plaintiff admitted that she saw the truck approaching from her right, she steadfastly insisted that she thought she had plenty of time to cross the intersection and did not realize how fast the truck was coming until it was upon her. In view of that testimony, a holding that the testimony of a party may not amount to a judicial admission was pure dicta. To the extent that *Cox v. Jones* can be construed as holding that the testimony of a party may not under any circumstances amount to an informal judicial admission, it is in conflict with our opinion in *Morey, Administratrix v. Redifer et al.*, supra, and is overruled.

If plaintiff's testimony in this case was inconclusive or related to matters about which he might be mistaken, the effect of his testimony would be for the jury. But plaintiff was testifying as to matters within his special knowledge and in part to facts about which only plaintiff was fully informed. Plaintiff was in the best position to know whether he warned the crane operator out of fear for his own safety. Plaintiff did not equivocate in his testimony that he warned the operator both in the forenoon and in the afternoon and that the operator was also warned on a number of occasions by the LaCrosses and Ed Zeller.

■ In view of this testimony it seems apparent to us that the jury could find for the plaintiff only after

first finding that the testimony of the plaintiff was false. A jury should not be permitted to arrive at a verdict by that process. The court should have directed a verdict for the defendant.

Reversed with instructions to enter judgment for the defendant.