**Winifred BOLAM and Christiane Massias, Plaintiffs-Appellees,**

v.

**LOUISVILLE & NASHVILLE RAILROAD COMPANY, Defendant-Appellant.**

**No. 14446.**

United States Court of Appeals
Sixth Circuit.

Nov. 15, 1961.

C. R. Beirne, Cincinnati, Ohio, Stanley J. Aronoff, Cincinnati, Ohio, on brief, for plaintiffs-appellees.

Thomas S. Calder, Cincinnati, Ohio, Dinsmore, Shohl, Barrett, Coates & Deupree, James O. Coates, Cincinnati, Ohio, on brief, for defendant-appellant.

Before MILLER, Chief Judge, and CECIL and O'SULLIVAN, Circuit Judges.

SHACKELFORD MILLER, Jr., Chief Judge.

Appellees brought this action against the Pennsylvania Railroad and the appellant, Louisville & Nashville Railroad Company, to recover for personal injuries suffered by them when the automobile in which they were riding as passengers was struck by a locomotive, owned and operated at the time by the Pennsylvania Railroad over track owned and maintained by the appellant. Appellees alleged in their complaint negligent operation of the locomotive by the Pennsylvania Railroad and negligent maintenance of the crossing by the Louisville & Nashville Railroad Company, which negligence caused the accident and injuries complained of.

The accident occurred about 8:45 P.M. January 15, 1958, at the intersection of Fifth Street and Saratoga Street in Newport, Kentucky. Saratoga Street runs north and south; Fifth Street runs east and west.

The Pennsylvania locomotive was backing on Saratoga Street in a northerly direction on a single track, which ran down the center of Saratoga Street, with lanes reserved for vehicular traffic on the east and west sides. It was traveling at about six miles per hour. Its rear headlight was on, four groundlights were in operation, and its bell was ringing.

Appellees were passengers in an automobile which was being operated by Eugene C. Tower in an eastwardly direction on Fifth Street. The automobile in attempting to cross the intersection was hit by the locomotive at its right rear door. The evidence as to the speed of the automobile varied from "six to eight miles an hour," "kind of slow," "We weren't going fast," "35 to 40 miles per hour," "a fairly high speed," to "at least 50."

The crossing is located in a business and residential district of downtown Newport with a Gulf Service Station on the southwest corner, a vacant lot on the southeast corner, a bar on the northeast corner, and a three-story building on the northwest corner. A large volume of traffic crosses the railroad at this intersection. There are street lights along Saratoga and Fifth Streets which were lighted at the time of the accident.

The City of Newport had placed standard stop signs for vehicular traffic at each of the four corners of the intersection, about twenty feet from the corner. It was a four-way stop intersection. None of the signs contained any notice of the presence of the railroad track. The ordinances of the City of Newport did not require any additional warning of this intersection. The railroad crossing was not equipped with manual or automatic signal devices, nor was it equipped with gates or watchmen, nor was there a crossarm or other railroad sign.

A driver going east on Fifth Street, who stopped at the stop sign on Fifth Street, had a view of about 100 feet to the south if there were no obstructions in the way. Parking was not permitted in the 20-foot area from the stop signs to the corner.

The District Judge, hearing the case without a jury, dismissed the action against the Pennsylvania Railroad on the ground that it was not negligent in the operation of the locomotive. He found that the appellant was not in violation of any statute, ordinance or regulation in the maintenance of the crossing, but that the hazardous character of the crossing required that a warning signal or sign be installed and maintained, that it was negligent in the maintenance and operation of the crossing in failing to install and maintain any signal or any sign warning persons approaching the crossing, and that such negligence was a proximate cause of the accident. He also found that Tower, the driver of the automobile, was negligent in the operation of the automobile, but that his negligence was not imputed to the appellees, and that the ap-

pellees were not contributorily negligent. Judgment was entered for the appellees against the appellant, from which this appeal was taken.

Appellant contends it was error for the District Judge to find it negligent in not installing and maintaining a warning signal or sign at the intersection, in that it was not required by any statute or ordinance to do so, that stop signs had been placed at the intersection by the city of Newport, and that the crossing was not of such a hazardous character as to require of it such extra-statutory duty. Section 277.160, Kentucky Revised Statutes; Louisville & N. R. Co. v. Craig, 310 Ky. 43, 45–46, 219 S.W.2d 954; Land v. Cincinnati, N. O. & T. P. R. Co., 226 Ky. 374, 10 S.W.2d 1084; Louisville & N. R. Co. v. Marshall's Adm'x, 289 Ky. 129, 137–138, 158 S.W.2d 137; Milner's Adm'r v. Evansville Railways Co., 188 Ky. 14, 22, 221 S.W. 207. There may be merit under the authorities above referred to in this contention, but under the view which we take of this case, we find it unnecessary to make a ruling on that issue.

There was a conflict in the evidence whether the driver of the automobile stopped at the intersection and looked for approaching vehicles going north and south on Saratoga. Although appellant introduced testimony that the driver did not stop, both appellees and the driver, in addition to an impartial witness, testified that the driver stopped at the intersection before proceeding across it.

Appellee Winifred Bolam testified on direct examination, "Well, we were driving along, kind of slow because we were looking for directions, you know, and we came to a stop like for a stop street" and that the automobile was hardly in motion when she looked to the right and saw the locomotive about six feet away. To a later question by her counsel, "When your automobile came up to Saratoga Street, did it come to a complete stop?", she answered, "Yes." On cross-examination she was asked, "Now, you have testified that you stopped at the intersection of Saratoga?", to which she answered "Yes, we did." She also stated that she did not notice a stop sign, but "I just knew that we stopped." To the question, "Do you recall how long you remained in a stationary position?", she answered, "No. It was just like a normal stop."

Appellee Christiane Massias testified on direct examination, "Well, we were going kind of slow, and I do recall definitely that we did make a stop." On cross-examination she testified as follows. Question: "You have also testified that you came to a stop at the intersection of Fifth and Saratoga: is that correct?" Answer: "That's correct, sir." Question: "How long were you in a stationary position?" Answer: "Well, I couldn't say exactly how long: and the very best way I could explain, that the car came to a complete stop, it was not moving. That explains it." With respect to the actions of the driver, she was asked, "Then he looked both ways, you believe, and then he started up?", to which she answered, "He started up again." She estimated that the automobile was about nine feet from the locomotive when she first saw it.

Appellant moved for a dismissal of the action against it at the close of appellees' case and at the close of all the evidence in the case, which motions were denied. In the consideration of these motions the appellees were bound by their own testimony that the automobile made a complete stop at the intersection before attempting to cross. Where a party's own testimony, if true, would defeat his right to a verdict, and such statements are not modified or explained, a verdict should be directed against him. Bell v. Harmon (Ky.1955), 284 S.W.2d 812; Kansas Transport Co. v. Browning, 219 F.2d 890, 893, C.A.10th; Barnett v. Terminal Railroad Association of St. Louis, 228 F.2d 756, 761, C.A.8th, certiorari denied, 351 U.S. 953, 76 S.Ct. 850, 100 L.Ed. 1476; Ercoli v. United States, 76 U.S.App.D.C. 360, 131 F.2d 354, 357. Annotations: 169 A.L.R. 798; 9 Vanderbilt Law Review, 879. See: Mathis v. Tutweiler, 295 F. 661, C.A.6th. Appellees' testimony on this phase of the case

**812**

was not inadvertent, but was definite and unequivocal, stated several times on both direct and cross-examination, with no attempt made later to withdraw it, modify it or explain it away. They are bound by the position deliberately taken by them on this issue, even though there was other testimony contradicting it. Bell v. Harmon, supra, (Ky.1955), 284 S.W.2d 812; Harlow v. LaClair, 82 N.H. 506, 136 A. 128, 50 A.L.R. 973; Bockman v. Mitchell Bros. Truck Lines, 213 Or. 88, 320 P.2d 266, 69 A.L.R.2d 152; Stein v. General Necessities Corp., 232 Mich. 322, 329, 205 N.W. 104. See: Mathis v. Tutweiler, supra, 295 F. 661, C.A.6th.

The driver stated in a deposition taken by the appellant that there was no traffic at the intersection in any direction, that he had no recollection of any parked cars, that he noticed the "stop sign" at the southwest corner of the intersection, that he stopped at the intersection, and "I looked left and right, saw no traffic, and proceeded, and the next thing was the impact with the engine," and that at no time prior to the impact did he see or hear the engine.

We are of the opinion that if the driver saw the "stop sign" before reaching the intersection and made a complete stop at the intersection and looked to the left and right for approaching vehicles before starting across the intersection, the failure of the appellant to install a warning sign of its own was not, under the circumstances of this case, the proximate cause of the accident. If the driver knew that there was an intersection at which he was required by law to stop before entering and he actually stopped at the crossing, the proximate cause of the accident was his failure to look and see the approaching locomotive, not the failure of the appellant to warn him that the crossing existed. Under Kentucky law a party will not be heard to say that he looked and did not see what was in plain sight. Chesapeake & O. Ry. Co. v. Trimble, (Ky.1957), 306 S.W.2d 310; Louisville & N. R. Co. v. Hines, (Ky.1957), 302 S.W.2d 553. The pres-

ence of a train in an intersection is, in the absence of unusual circumstances, a sufficient warning to an approaching motorist. Louisville & N. R. Co. v. Branson (Ky.1954), 267 S.W.2d 945; Illinois Central R. Co. v. Maxwell, 292 Ky. 660, 167 S.W.2d 841.

We are, accordingly, of the opinion that as a matter of law the negligence of the driver of the automobile, rather than any negligence on the part of the appellant, was the proximate cause of the accident, and that the District Judge was in error in denying appellant's motion to dismiss the action against it.

The judgment is reversed and the cause remanded to the District Court with instructions to enter judgment for the appellant. Section 2106, Title 28 U.S.Code.