192 So.2d 364

**Sidney MATCHUM et ux.**

**v.**

**ALLSTATE INSURANCE COMPANY et al.**

No. 48037.

Nov. 7, 1966.

Rehearings Denied Dec. 12, 1966.

W. Leonard Werner, Baton Rouge, for plaintiffs-relators.

Robert J. Vandaworker, Taylor, Porter, Brooks, Fuller & Phillips, John S. White, Jr., Kennon, White & Odom, Baton Rouge, for defendants-respondents.

HAMLIN, Justice:

We directed Certiorari herein to the Court of Appeal, First Circuit, (Art. VII, Sec. 11, La.Const. of 1921) in order that we might review its judgment on rehearing (180 So.2d 767) which affirmed in part and reversed in part the judgment of the trial court in an action in tort for damages allegedly resulting from injuries suffered in an automobile and tractor-trailer collision.

The Court of Appeal has ably stated the pertinent facts of the case as follows:

"The facts disclose that on June 18, 1962 Rodia Matchum was riding as a guest passenger in an automobile driven by Elliott Turner in a northerly direction on U.S. Highway 61, coming from New Orleans to Baton Rouge. This Highway consists of four lanes, two lanes on each side, separated by a neutral ground. When the car arrived at a 'pass through' on the Highway where there is a warning light which marks the turning place he proceeded in a westerly direction toward the L.S.U. stadium. The pavement was wet as it had been raining.

The Turner car was followed around 100 to 150 yards by a Ford car owned and operated by Mr. Stephen Flowers of Port Arthur, Texas. Mr. Flowers was accompanied by his wife, and was pulling a trailer on which there was a speed boat, and he was returning from the Pan-American Boat Races in New Orleans. About 150 yards behind Mr. Flowers' car was the Prassel truck and tractor driven by Huey P. Scott. These three vehicles were all on the right hand lane of traffic, which is the East lane of the North bound lane of traffic. Mr. Flowers testified that as they approached the 'pass through' for some reason the Turner car turned left, supposedly to enter the left hand lane and had come to a stop at a 45 degree angle astride the middle line of the south bound, or west traffic lane of Highway 61. Mr. Flowers slowed his car and on seeing this maneuver turned to his right and passed the Turner vehicle on the extreme right. His car and trailer was half on the Highway and half on the shoulder as he went by. He then pulled into the right lane and remarked to his wife, 'Look, there is going to be an accident,' as he had seen the truck and trailer following him. Mrs. Flowers turned and looked and Mr. Flowers from his rear view mirror also saw the truck as it approached the Turner car when the driver slammed on his brakes and turned to the right in an

attempt to follow Mr. Flowers' example and pass the Turner vehicle on the right. His trailer was partly on the Highway and partly on the shoulder on the right, but his trailer jackknifed and skidded into the Turner car, striking it in the rear and as a result of which Rodia Matchum, who had reached down to pick up a sandwich, was thrown back over the front seat on to the floor in the back, and received the injuries of which she complains."

Sidney Matchum, husband of Rodia Matchum, and Rodia Matchum instituted suit against Prassel Lumber Company and its liability insurer, Allstate Insurance Company, and Maryland Casualty Company, the liability insurer of Elliott Turner, son-in-law of the Matchums.

In Articles 8 and 10 of their petition, plaintiffs alleged that Elliott Turner was negligent in that he

(1) failed to keep his automobile under proper control,

(2) failed to keep a proper lookout and failed to see what he should have seen, or if seeing it, failed to act reasonably thereon,

(3) stopped his automobile on the highway in front of oncoming traffic,

(4) operated his automobile in a reckless and unlawful manner without proper regard for other traffic on the road,

(5) failed to exercise the last clear chance to avoid the accident.

The trial court found Elliott Turner solely and exclusively responsible for the collision, thus exonerating Prassel Lumber Company and Allstate Insurance Company. The Court of Appeal affirmed this finding with sound and thorough reasons. We agree with the findings and reasoning of both courts on the questions of negligence and proximate cause.

The trial court rendered judgment in favor of Rodia Matchum and against Maryland Casualty Company, in the sum of $4,500.00; it further rendered judgment in favor of Sidney Matchum and against Maryland Casualty Company, in the sum of $516.49, for expenses borne in connection with his wife's injuries; it also recognized the $5,000.00 limit of the liability insurance policy of Maryland Casualty Company.

On original hearing, the Court of Appeal affirmed the judgment of the trial court. It granted a rehearing "limited to the question of the effect of the alleged judicial confessions of plaintiff, Rodia Matchum." The testimony of Rodia Matchum constituted the alleged judicial confessions, and on rehearing the Court of Appeal stated, "An examination of Rodia Matchum's testimony shows that it was consistent, it did not vary or contradict itself in any form whatsoever, even though it was contrary to the balance of the testimony and the physical facts as found by

the Trial Judge and by this Court in its original opinion." The Court of Appeal found that Rodia's testimony was a judicial confession; it rejected her demands, dismissed her suit, and rendered judgment in favor of Maryland Casualty Company.

Plaintiffs, applicants for certiorari, assign many errors to the judgment of the Court of Appeal, but we find that the only real questions posed for our determination with respect to the judgment are whether the testimony of Rodia Matchum constitutes a judicial admission or confession, and, if so, whether it precludes her recovery of damages.

Rodia Matchum was called as a witness on the trial of Suit No. 94,708 "Elliott Turner v. Allstate Insurance Company." Her pertinent testimony therein on direct examination is as follows:

"Q. How fast had Elliott been driving?

"A. About twenty-five as near as I can guess at it.

"Q. Had he been driving twenty-five miles per hour all the way from New Orleans?

"A. He was driving a little bit faster. I don't know exactly how many miles at that time, but he was going a little faster, but he slowed down after the rain 'cause it was coming kind of hard.

"Q. What happened just before the accident, you got hit by this truck, what were you doing?

"A. I was sitting in the car with Elliott.

"Q. What were you doing just before the accident happened?

"A. I wasn't doing anything, but I stooped down to get a sandwich, but when I looked back just before then, I saw the truck coming fast, and just as I stooped down to get a sandwich, it was at that time I saw the car pass on the left side, coming toward Baton Rouge, too, and I stooped down to get a sandwich and then the accident happened.

"Q. Did Elliott slow the car down any just before the accident happened?

"A. He kept going on the same way he was going.

"Q. Did he stop the car?

"A. No, sir, he didn't stop.

"Q. What lane of traffic was he driving in?

"A. In the right lane.

"Q. Did he ever drive in the left lane?

"A. No, sir.

"Q. Did he ever slow down?

"A. No, sir.

"Q. Did he ever stop?

"A. No, sir."

On cross-examination in said Suit No. 94,708, Rodia testified as follows:

"Q. Let me ask it this way. You saw the car pass Elliott Turner on the left you say?

"A. Yes, sir.

"Q. You reached at that time for a sandwich?

"A. Yes, sir.

"Q. Did you get the sandwich picked up before the truck hit you?

"A. No, sir, I did not.

"Q. Did you make a fast reach for the sandwich?

"A. I was going down to get it and I never did come up with it. When I knew anything, my head was down and my heels was in the air and I never did get the sandwich. I forgot all about ever reaching for a sandwich.

"*  *  *

"Q. At any time before that car was hit from the rear by the truck, did Elliott lose control of his automobile?

"A. No, sir, he didn't.

"Q. He stayed in the right lane of travel the whole time?

"A. Yes, sir.

"Q. Was he watching where he was going?

"A. Yes, sir.

"Q. Did he stop his automobile at any time?

"A. No, sir, he didn't stop."

On direct examination in the present suit, Rodia Matchum stated that she was supposed to be sixty-seven years of age. Her pertinent testimony is as follows:

"Q. Rodia, when did you first realize you were going to be in an accident or an accident was going to occur?

"A. When I first—

"BY THE COURT:

"Q. What he wants to know is when is the first time you knew there was going to be an accident?

"A. An accident?

"Q. You know, when the car was going to hit you?

"A. Well, I didn't really know it was going to hit me, but I did see the truck coming in the back, but I really didn't know it was going to hit me. When I knew anything, it had done hit us, but I had stooped down to get a sandwich at the time presently, you see what I mean, and it hit us just at the time I stooped down to get the sandwich. Before I could raise up with the sandwich, it had already done happened, but I—

"Q. In other words, when you saw the truck before the accident, I mean before you all got hit, you didn't know it was going to hit you?

"A. No, sir, I did not.

"Q. And as a matter of fact, you were reaching for a sandwich when it did hit?

"A. Yes, sir."

West's LSA–C.C., Art. 2291, provides:

"The judicial confession is the declaration which the party, or his special attorney in fact, makes in a judicial proceeding.

"It amounts to full proof against him who has made it.

"It can not be divided against him.

"It can not be revoked, unless it be proved to have been made through an error in fact.

"It can not be revoked on a pretense of an error in law."

Very recently, in Reynolds v. Hardware Mutual Casualty Company, 249 La. 268, 186 So.2d 588, we were confronted with the same questions as are herein presented respecting the application of the above article to the testimony of a plaintiff. We found it unnecessary to pass upon the legal issues presented, concluding that plaintiff, a guest passenger, did not completely exonerate her host driver when her assertions in the litigation were taken as a whole.

Herein, after analyzing the testimony of Rodia Matchum as a whole, we are constrained to conclude that it is not an intentional exoneration of her host driver, Elliott Turner. The testimony does not partake of the nature of a true judicial admission or confession.

" 'Admissions' in the law of evidence are concessions or voluntary acknowledgments made by a party of the existence of certain facts. They may be classified as being either judicial or extrajudicial; but some authorities have divided admissions into quasi admissions on the one hand, and true or judicial admissions on the other.

" 'Admissions,' in the law of evidence, have been defined as being concessions or voluntary acknowledgments made by a party of the existence of certain facts. They have also been defined as statements by a party or someone identified with him in legal interest of the existence of a fact which is relevant to the cause of his adversary. The term embraces any statement of fact made by a party which is against his interest or unfavorable to the conclusion for which he contends or inconsistent with the facts alleged by him. * * *" 31A C.J.S. Evidence § 270, p. 694.

"The testimony given by or for a party at the trial of a case may be used against him as an admission in the same, or on a subsequent, trial, or even in another ac-

tion, provided such testimony is material and relevant.

"Testimony given on the witness stand does not partake of the nature of a formal judicial admission in all cases as a matter of law; and according to some decisions it is only where a party testifies clearly and unequivocally to a fact which is peculiarly within his own knowledge that such testimony may be considered as a judicial admission. * * *" 31A C.J.S. Evidence § 311, pp. 794–795.

See, also, 20 Am.Jur., Evidence, Sec. 557, p. 469; McCormick on Evidence, Chapter 27, pp. 502–516; Wigmore on Evidence, Book IX, Title II; Judicial Admissions, Secs. 2588–2594, pp. 586–601.

The trial court and the Court of Appeal found that Elliott Turner's car was not in its right lane of travel, and that Turner had placed it, without warning, in a position which impeded oncoming traffic—specifically, the Prassel Lumber Company truck. While Rodia Matchum did testify that Turner was traveling in his right lane—her testimony being the same on direct examination and on cross-examination by two different attorneys—she also emphasized the fact that at the time of the accident she was in a stooped position endeavoring to secure a sandwich. She did not testify that she was particularly observant of the highway or of Turner's maneuvers. She was a relaxed and hungry passenger—a woman of sixty-seven years of age, whose

thoughts, apparently, were only of her comfort and relief from hunger. Rodia Matchum's recollection of events immediately prior to and at the time of the accident is vague and unclear. Under the circumstances and facts of record, we conclude that Rodia Matchum's testimony is not consistent to a degree that no uncertainty exists. Her testimony is not unequivocal and, as stated supra, does not exonerate Turner from negligence. It is not tantamount to a judicial confession; therefore, Article 2291 is not appropriate to the circumstances involved herein. Cf. Reynolds v. Hardware Mutual Casualty Company, 249 La. 268, 186 So.2d 588; Gros v. United States Fidelity & Guaranty Company, La. App., 183 So.2d 670; Franklin v. Zurich Insurance Company, La.App., 136 So.2d 735; Prieto Lumber Company v. Shoultz, La. App., 111 So.2d 857; Stroud v. Standard Accident Insurance Co., La.App., 90 So.2d 477; Thompson v. Haubtman, 18 La.App. 119, 137 So. 362; Coleman v. Jones & Pickett, 131 La. 803, 60 So. 243; 23 La.L.Rev., p. 406; 69 A.L.R.2d 152; Bockman v. Mitchell Bros. Truck Lines, 213 Or. 88, 320 P.2d 266.

Because of our findings supra, we do not find it necessary to pass upon the Motion to Rescind filed by Allstate Insurance Company and Prassel Lumber Company.

For the reasons assigned, the judgment of the Court of Appeal, First Circuit, on rehearing, is reversed and set aside insofar

as it rejected Rodia Matchum's demands against Maryland Casualty Company and dismissed her suit; the judgment is affirmed insofar as it affirmed the judgment of the trial court. In all respects the judgment of the trial court is affirmed. All costs to be paid by Maryland Casualty Company.

HAMITER, J., concurs in the result.

HAWTHORNE, Justice (dissenting).

It is my view that the facts given in the testimony of the plaintiff Rodia Matchum completely exonerate Elliott Turner, the driver of the car in which she was a passenger, from all fault.

Rehearings denied.

HAWTHORNE, J., is of the view that a rehearing should be granted.

SANDERS, J., is of the opinion a rehearing should be granted.