Argued October 13, reversed December 21, 1972

SCHROEDER, *Respondent, v.*
BLITZ-WEINHARD COMPANY, *Appellant.*

504 P2d 719

*David C. Landis* of Gearin, Landis & Aebi, Portland, argued the cause and filed briefs for appellant.

*Alex Parks,* Portland, argued the cause for respondent. On the brief were White, Sutherland, Brownstein & Parks and David F. Rennie.

## McALLISTER, J.

The plaintiff is a mechanic employed by Pacific Scale Company, who, during a service call to defendant's brewery, was injured while using defendant's hoist. The jury returned a verdict for plaintiff and defendant appeals. We reverse.

The controlling question is whether plaintiff was negligent as a matter of law in attempting to ride on the hoist while using it to lift his equipment.

Plaintiff's job was to install and service scales. On June 6, 1969, he went to defendant's brewery to balance its scales. He brought with him a number of test weights weighing a total of about 280 pounds, a tool box weighing about 40 pounds and a hand truck, all of which he unloaded on the first floor of one of the brewery buildings. The scale which plaintiff intended to service was on the second floor.

Plaintiff had made five or six prior service calls to defendant's brewery. Usually the service calls were made by one man, but "a couple of times" plaintiff went to the brewery with a fellow employe, who showed him "where the scales were and how they were to be checked, and so forth."

The service men used defendant's hoist to get their weights and other equipment to the second floor where some of the scales were located. The hoist was a simple drum hoist powered by electricity. The hoisting was done by a single steel chain with a three-inch hook on the bottom end. Three different slings were used on the hoist, but we are concerned only with the barrel sling and the dolly lift. One of plaintiff's wit-

nesses, a fellow employe, described how the hoist was used by Pacific's servicemen.

"Q   Did you and Mr. Schroeder have occasion to test scales at Blitz Brewery?

"A   Yes.

"Q   Would you tell the jury how you went about it, how you went about testing these scales and getting your weights up where the scales are?

"A   Of course, there are a number of buildings, and different scales to check; but the one I believe you're referring to was in—there was an elevator hitch we used to haul our equipment up; oh, 300 pounds of weight, a dolly, tool box, and so forth, to take upstairs, and check the scales upstairs. I believe there was four scales up there.

"Q   And how did you go about using this elevator, lift, or hoist to get your equipment upstairs?

"A   Well, we loaded it from the bottom floor, and there was a chain which you pulled to bring it up; and as a rule, I would go upstairs and pull the chain and guide the equipment in. Then, you'd have to pull it into the platform, or the floor there, and then unload.

"Q   That's as it went up through the hole in the second floor?

"A   Right.

"Q   You'd have to pull it over to the side?

"A   Right.

"Q   And set it down?

"A   Right.

"Q   And I take it, then, that you'd go upstairs, and you'd be standing there, pulling the control rope, would you not?

"A   Right.

"Q   The fellow down below, the other man, would load the stuff on the hoist?

"A   Most of the time, we were by ourselves. It happens that first Greg and I went over a couple

of times as I took him over there to show him where the scales were, and how they were to be checked, and so forth.

"Q Do I understand you correctly that most of the time, there was one man, or two men?

"A One.

"Q And were you ever alone, yourself?

"A Oh, yes.

"Q And how did you do it when you were alone in the building?

"A Well, like I said, I would load it, and then go upstairs, and use the levers to bring it upstairs and pull it in."

Plaintiff described the process as follows:

"Q Now, when you went there on prior occasions—we are speaking of prior to June the 6th of 1969—in the company of other employees of Pacific Scale Company, how did you go about getting your weights from the ground floor to the top floor?

"A Well, the one person would go up above, and the other person would stay down, and load the weights, and make sure they were balanced right, and the other person would go up above and bring them up, and then swing them over where they land on the floor up above.

"Q By going—by saying the other person would go up on the next floor, how did he get up there?

"A Up the stairs."

On the day plaintiff was injured he walked up the stairs to the second floor to check the location of the scales he was going to service and then returned to hoist his equipment to the second floor. Plaintiff loaded his equipment on the dolly lift and wheeled it under the chain of the hoist. The dolly is an oblong platform about two feet wide and four feet long

equipped with casters. At each end a cable about ten feet long is attached to the corners so that the cable forms a loop like the handle on a shopping bag. When the cables from each end are brought together and hooked into the three-inch hook of the hoist they form a sling with which to hoist the dolly.

The hoist had last been used by employes of the brewery to hoist barrels and the barrel sling was still hanging from the hoist. The barrel sling consisted of two pieces of chain attached at one end to a central ring and both having at the other end a small square-cornered hook designed especially to hook over the chimes of the barrel. Instead of removing the barrel sling from the hoist plaintiff put a cable from each end of the dolly lift in one of the chime hooks of the barrel sling. Plaintiff then pulled the chain which activated the hoist. He described what happened next as follows:

"Q On this particular occasion, would you tell the jury in your own words what you did in order to get your scale weights and your hand truck and your tool chest up on the second floor. Describe to the jury on your own just what you did.

"A Okay. I went in there, and unloaded my weights and my tool box and hand truck onto the loading dock inside the building. And went up to the second floor just to see if the scales were there. And I came down and took the car tool [Sic. Witness probably meant the dolly.] that was there and put it on the hook, or hooks. I thought there was one hook. Anyway, put it on the hook, loaded my weights, centered them so they were all evenly balanced, and pulled the cord to let it go up, and there was—it seems to me there was some shelves or something there, and it hit on the shelves, as it was going up a little bit, and started to tip it, so I let it back down. And I got on it, and made sure

everything was tight and where it should be, and as it started to go up, why, I pushed it away from the wall. It didn't swing, but I pushed it away from the wall, and then we went up and everything was just fine. I grabbed ahold with my left hand, hanging on with my right, and just gone up a foot-and-a-half at a time, and then raised my arm back up and go again; and as I got right to the very top, I don't know what happened, but it just came disconnected, or something. Anyway, we all—everything fell.

"Q Now, when it fell, did one end of the dolly fall down; is that what happened?

"A That's what I remember looking up and seeing, yes."

The defendant moved for a directed verdict on the ground, among others, that plaintiff was contributorily negligent as a matter of law. We think the defendant was entitled to a directed verdict.

In our view plaintiff was not only negligent, but foolhardy in electing to ride on a hoist obviously intended to lift only materials and equipment and which he had already demonstrated was prone to tip. When he elected to use his own body to keep the dolly steady as he hoisted it and its load and himself a foot or so at a time we think he voluntarily assumed the obvious risk involved in the unorthodox maneuver. Other courts have reached a similar conclusion under somewhat similar facts. *Youngblood v. Henry C. Beck Company*, 93 Ga App 451, 91 SE2d 796 (1956); *Rice v. Merritt-Chapman & Scott, Inc.*, 326 F2d 122 (9th Cir 1963). See, also, *Bockman v. Mitchell Bros. Truck Lines*, 213 Or 88, 320 P2d 266, 69 ALR2d 152 (1958).

So far as any witness knew, no employe of either Pacific Scale Company or the brewery or any other person had ever tried to ride this hoist before.

The danger involved was so obvious that no person of ordinary prudence would subject himself thereto. The case is reversed with instruction to enter a judgment for the defendant.