**UNITED STATES of America, Appellee,**

v.

**Robert Anthony EDER, a/k/a Bobby Eder, Appellant.**

**No. 86–5422.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 4, 1987.

Decided Jan. 15, 1988.

Rehearing Denied Feb. 9, 1988.

Claudette M. Abel, Dickinson, N.D., for appellant.

Lynn E. Crooks, Asst. U.S. Atty., Fargo, N.D., for appellee.

Before John R. GIBSON, Circuit Judge, HENLEY, Senior Circuit Judge, and FAGG, Circuit Judge.

FAGG, Circuit Judge.

Robert Anthony Eder appeals from his second-degree murder conviction for the unspeakable death of his three-year-old daughter. *See* 18 U.S.C. § 1111 (1982 & Supp. II 1984); 18 U.S.C. § 1153 (Supp. II 1984). We affirm.

In 1985 Eder, an Indian, lived on the Fort Peck Indian Reservation in Montana with his wife Rosebud and their children. The murder victim, Shelena Skye Olson, was born into a relationship Eder was involved in before his current marriage. While Shelena was in Eder's care, Eder became angry with Shelena because she wet her bed. He threw Shelena against an iron stove, which resulted in devastating brain damage and left her battered, sluggish, and unresponsive. Because of her vegetative condition, the Government's medical expert testified that it would have been "obvious to anyone who even casually observed the child that there [was] something severely wrong with her."

Eder hurriedly left Montana with his family, including Shelena. They traveled to the Wind River Indian Reservation in Wyoming. While on the Wyoming reservation, an Indian medicine man told Eder he believed the girl was in a coma and required hospital care. Eder stayed on the Wyoming reservation only a few days, but before leaving Eder told the Indian medicine man he would seek medical attention for Shelena.

Eder then traveled to the Standing Rock Sioux Indian Reservation in North Dakota. Eder remained there for over a week, but at no time did he seek medical attention for Shelena. On the eighth day in North Dakota, Shelena died. An autopsy revealed the cause of death was pneumonia, resulting from a build-up of foreign material in Shelena's lungs. Because of her brain damage, Shelena was without the reflex mechanism that prevents food particles and liquids from entering the lungs. Although the damage to Shelena's brain was irreversible, the evidence showed Shelena could have lived if medical attention had been obtained for her even in the last days of her life.

On appeal Eder argues his conviction should be reversed for several reasons, including the following: 1) the federal district court in North Dakota did not have subject matter jurisdiction over this case; 2) Eder was denied his constitutional right to effective assistance of counsel; 3) the district court improperly instructed the jury; 4) the Government produced insufficient evidence to support the jury's verdict; and 5) Eder was prejudiced by prosecutorial misconduct during the trial. We reject all Eder's contentions.

Initially, Eder argues the federal district court in North Dakota was without authority to try this particular case because the Government failed to prove that an act or omission causing Shelena's death occurred in North Dakota. Although Eder indicates his argument is jurisdictional, he appears to challenge venue. In any event, we reject both jurisdiction and venue as bases for reversal.

Federal courts have subject matter jurisdiction over cases involving the murder of any person by an Indian within Indian country. *See* 18 U.S.C. §§ 1111, 1153. Further, Congress has provided that "[i]n all cases of murder * * *, the offense shall be deemed to have been committed at the place where the injury was inflicted * * * or other means employed which caused the death, without regard to the place where the death occurs." 18 U.S.C. § 3236 (1982). Here, the district court instructed the jury that in order to find Eder guilty of second-degree murder the Government must establish beyond a reasonable doubt "that the act of killing Shelena Skye Olson was committed in 'Indian Country,' that is, within the exterior boundaries of an Indian Reservation." In rendering its guilty verdict, the jury made such a finding, and the record evidence supports the finding. *See United States v. Todd*, 657

F.2d 212, 215–16 (8th Cir.1981), *cert. denied*, 455 U.S. 926, 102 S.Ct. 1288, 71 L.Ed.2d 469 (1982). Thus, the federal district court had jurisdiction over this case.

Although any contention about venue may have been waived by Eder because at trial he failed to move to dismiss for lack of venue, *see United States v. Netz*, 758 F.2d 1308, 1311–12 (8th Cir.1985) (per curiam), we reject the venue argument on the merits. The Federal Rules of Criminal Procedure state that "[e]xcept as otherwise permitted by statute * * *, the prosecution shall be had in a district in which the offense was committed." Fed.R.Crim.P. 18. Thus, for venue to be proper in North Dakota, an act or event causing Shelena's death must have occurred there. *See United States v. Black Cloud*, 590 F.2d 270, 272–73 (8th Cir.1979); *see also* 18 U.S.C. § 3236 (designating the place where a murder is committed).

■ Venue is ordinarily a question of fact, *see Black Cloud*, 590 F.2d at 272, and the Government must establish proper venue by a preponderance of the evidence, *see id.* at 272 n. 2, 273. Here, the district court instructed the jury that it must find venue proper in North Dakota before it could return a verdict. The jury did so.

Although the initial trauma to Shelena's head may have occurred outside of North Dakota, the evidence shows this injury was not the cause of Shelena's death. Rather, Shelena could have survived had Eder sought medical attention for her in North Dakota. The evidence shows Eder's continuing pattern of neglect for Shelena's medical needs led to her pneumonia, which in turn caused her death. Accordingly, the evidence supports the jury's venue finding.

■ Eder also argues he was denied his constitutional right to effective assistance of counsel. *See* U.S. Const. amend. VI. More specifically, Eder contends his counsel's performance was prejudicially deficient in several ways, including: 1) counsel's failure to object to the admission of several photographs and medical records; 2) counsel's failure to impeach several Government witnesses and his failure to object to the Government's questioning of witnesses; 3) counsel's failure to pursue Eder's right to a speedy trial; 4) counsel's failure to request a bill of particulars; and 5) counsel's failure to object to certain jury instructions.

To prevail on his claim of ineffective assistance of counsel, Eder must show his counsel's performance was deficient and that Eder was prejudiced by counsel's deficient performance. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Further, under *Strickland*, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065. After considering all Eder's assertions, we conclude Eder has failed to carry his burden to show his counsel's performance was deficient and, in any event, that Eder was not prejudiced by his counsel's actions. *See id.* at 687, 104 S.Ct. at 2064.

Eder next challenges several jury instructions given by the district court. He argues the court committed error because it instructed the jury on matters not supported by the evidence, because it instructed the jury in a manner that unfairly focused on Eder's credibility, and because it refused to give an instruction requested by Eder.

Eder concedes the plain error standard of review applies in our consideration of his contentions. *See United States v. McKnight*, 799 F.2d 443, 447 (8th Cir.1986); Fed.R.Crim.P. 30, 52(b). We need not consider Eder's contentions in the framework of this standard, however, because the district court did not commit error when it gave the challenged instructions or when it refused to give Eder's requested instruction.

Eder also contends the Government produced insufficient evidence on which the jury could find him guilty beyond a reasonable doubt. We disagree.

■ In considering a sufficiency challenge, we view the evidence in the light most favorable to the Government and permit all reasonable inferences that may be

drawn from the evidence. *United States v. Springer*, 831 F.2d 781, 784 (8th Cir.1987). Additionally, the Government is not required to show a subjective intent to kill to prove the essential element of malice. *United States v. Black Elk*, 579 F.2d 49, 51 (8th Cir.1978) (per curiam). Rather, the Government may prove malice through evidence that Eder's conduct was " 'reckless and wanton, and a gross deviation from a reasonable standard of care, of such a nature that a jury [was] warranted in inferring that [Eder] was aware of a serious risk of death or serious bodily harm.' " *Id.* (quoting *United States v. Cox*, 509 F.2d 390, 392 (D.C. Cir.1974)).

■ Here, the Government produced strong evidence that Eder inflicted the head injury to Shelena and then fled with her to North Dakota where he neglected her medical needs until she died. Witnesses also testified they encouraged Eder to seek medical attention for Shelena, but Eder ignored their pleas even though the little girl's health continued to deteriorate. The evidence supports an inference of malice by the jury because Eder was aware of the serious risk of death to Shelena and failed to act.

■ Finally, Eder argues he was prejudiced by the prosecutor's misconduct during the trial. Although some of the prosecutor's remarks were inappropriate, we cannot conclude his statements so prejudiced Eder that he was denied a fair trial. *See United States v. Janis*, 831 F.2d 773, 778 (8th Cir.1987). Nevertheless, we remain mystified over why prosecutors with strong evidentiary cases continue to overreach their role in the adversary process. *See, e.g., United States v. Dougherty*, 810 F.2d 763, 767–68 (8th Cir.1987); *United States v. Pierce*, 792 F.2d 740, 741–42 & n. 4 (8th Cir.1986); *United States v. Harvey*, 756 F.2d 636, 646 (8th Cir.), *cert. denied*, 474 U.S. 831, 106 S.Ct. 97, 88 L.Ed.2d 79 (1985).

We have considered all Eder's arguments, including his assertion the original and superseding indictments were constitutionally defective. We find all his conten-

tions without merit. Accordingly, we affirm.