**UNITED STATES of America, Appellee,**

v.

**Orville KLECAN, Appellant.**

**No. 87–2210.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 10, 1988.

Decided Oct. 5, 1988.

Vincent Powers, Lincoln, Neb., for appellant.

Paul D. Merritt, Jr., Lincoln, Neb., for appellee.

Before McMILLIAN, Circuit Judge, ROSS, Senior Circuit Judge, and LARSON,* Senior District Judge.

ROSS, Senior Circuit Judge.

Orville Klecan appeals from his conviction by a jury of six counts of converting to his own use property which was pledged to the Commodity Credit Corporation (CCC), an agency of the United States, in violation of 15 U.S.C. § 714m(c). The jury found as to each count that the value of the converted property exceeded $500, and Klecan was sentenced to thirty days imprisonment and five years probation and ordered to pay restitution. For the reasons set forth below, we affirm.

Klecan is a farmer in Diller, Nebraska. Each count against Klecan arose from a separate loan to him from the CCC. Klecan took out the loans in late 1981 and 1982. Each loan was secured by a mortgage on grain owned by Klecan. Klecan borrowed a total of over $56,000 from the CCC, secured by over 22,000 bushels of grain.

---

* The HONORABLE EARL R. LARSON, Senior District Judge, United States District Court for the District of Minnesota, sitting by designation.

Klecan signed an agreement for each loan providing that he would be responsible for the grain and keep it in good condition, and that he would not dispose of any grain without prior CCC authorization. However, an inspector from the Agricultural Stabilization and Conservation Service (ASCS)[1] discovered on March 15, 1984 that all but 855 bushels of the grain was gone. Klecan told the ASCS that he had fed the grain to his cattle in the summer of 1983 because the grain had gone out of condition.

After the presentation of evidence at trial, the district court[2] submitted to the jury a two-part verdict form. The first part provided for the jury to state whether Klecan was guilty as to each count, and the second part provided for the jury to state whether, as to each count with a guilty verdict, the government had proved beyond a reasonable doubt that the value of the converted property was in excess of $500. The jury returned a guilty verdict and found the value of the property to be over $500 on each count. Klecan then filed a motion for acquittal, arguing that there was insufficient evidence for the jury to make its finding as to the value of the grain. After discussing at length the evidence of the grain's value, the district court denied the motion, finding that there was sufficient evidence for the jury to find beyond a reasonable doubt that the value of the grain exceeded $500 in each count.

On appeal, Klecan argues that the value of the grain was an essential element of the crime and that the jury should have been so instructed. Klecan further contends that there was insufficient evidence for the jury to find that the grain's value exceeded $500.

15 U.S.C. § 714m(c) prohibits a person from willfully stealing, disposing of or converting to his own use any property mortgaged or pledged to the CCC. The statute provides for a fine of up to $10,000 and up to five years imprisonment if the value of the property exceeds $500, or a fine of up to $1,000 and up to one year imprisonment if such property has a value of $500 or less.[3]

■ Klecan complains that the district court erred in failing to instruct the jury that the value of the converted property was an essential element of 15 U.S.C. § 714m(c). The district court determined that the value of the grain was not an essential element of the offense, but was instead a sentencing consideration. We agree with the district court. The clear language of § 714m(c) indicates that the value of the property is not an essential element of the crime, but only is to be considered after guilt has been determined. *See McMillan v. Pennsylvania*, 477 U.S. 79, 86–87, 106 S.Ct. 2411, 2416–2417, 91 L.Ed.2d 67 (1986).

■ Moreover, even if the jury should have been instructed as to the issue of value, failure to do so was harmless error beyond a reasonable doubt. In reaching its verdict the jury specifically found that, as to each count, the government proved beyond a reasonable doubt that the value of the converted property was in excess of $500. *See Redding v. Benson*, 739 F.2d 1360, 1363–64 (8th Cir.1984), *cert. denied*, 469 U.S. 1222, 105 S.Ct. 1210, 84 L.Ed.2d 352 (1985).

1. The Agricultural Stabilization and Conservation Service administers the farm loan program for the Commodity Credit Corporation.

2. The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska.

3. 15 U.S.C. § 714m(c) (1982) provides:

Whoever shall willfully steal, conceal, remove, dispose of, or convert to his own use or to that of another any property owned or held by, or mortgaged or pledged to, the Corporation, or any property mortgaged or pledged as security for any promissory note, or other evidence of indebtedness, which the Corporation has guaranteed or is obligated to purchase upon tender, shall, upon conviction thereof, if such property be of an amount or value in excess of $500, be punished by a fine of not more than $10,000 or by imprisonment for not more than five years, or both, and, if such property be of an amount or value of $500 or less, be punished by a fine of not more than $1,000 or by imprisonment for not more than one year, or both.

Klecan also argues that there was insufficient evidence on which the jury could find that the value of the grain exceeded $500. We disagree. In considering a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the government, giving to the government the benefit of all reasonable inferences. *United States v. Eder,* 836 F.2d 1145, 1148–49 (8th Cir.1988).

The evidence in this case, although circumstantial, was sufficient to support the jury's finding as to each count. Count I was based on an October 22, 1981 loan for $16,402.50. The loan was secured by 6,750 bushels of corn, which had a loan rate of $2.43 per bushel. This corn was commingled with the grain which served as the basis for Count II. Count II related to a January 15, 1982 loan of $7,435.80, which was secured by 3,060 bushels of corn with a loan rate of $2.43 per bushel. The corn for these two loans was measured and inspected by an ASCS inspector on November 10, 1981, and found to be in good condition. It was measured and inspected again on June 16, 1982, and found to contain some brown weevil. The inspector noted the weevil so it could be brought to Klecan's attention and remedied. An August 25, 1982 inspection by the ASCS revealed no brown weevil, but found that the peak of the grain was getting moldy. The inspector again noted this so that Klecan could aerate or stir the corn. On March 15, 1984, the ASCS inspector discovered that the bin was empty.

Count III concerned a December 28, 1982 loan for $16,254, which was secured by 6,300 bushels of corn with a loan rate of $2.58 per bushel. The ASCS went to inspect the grain on March 15, 1984, and discovered that the bin was empty.

Count IV related to a November 1, 1982 loan for $5,805, which was secured by 2,250 bushels of corn with a loan rate of $2.58

per bushel. This corn was measured and inspected on February 24, 1983, and found to be in good condition. In March 1984, the ASCS inspector discovered that the bin was in the process of being emptied, with only 855 bushels of grain remaining.

Count V arose from a November 10, 1982 loan for $5,266.80, which was secured by 1,260 hundred weight of sorghum with a loan rate of $4.18 per hundred weight. On February 24, 1983, the grain was measured and inspected and found to be in good condition. The ASCS inspector found the bin empty on March 15, 1984.

Count VI concerned a November 12, 1982 loan for $5,266.80, secured by 1,260 hundred weight of sorghum with a loan rate of $4.18 per hundred weight. This grain was found to be in good condition when measured and inspected on February 24, 1983. The March 1984 inspection revealed the bin to be empty.

We find that there was sufficient evidence to support the jury's finding as to the value of the grain. The evidence does not support Klecan's contention that the grain had gone out of condition by the summer of 1983. To the contrary, the evidence showed that on February 24, 1983, the grain securing the last three loans was in good condition. Further, although some brown weevil had been found in the grain relating to the first two loans, this condition had been remedied by August 1982. At that time there was some mold on the corn, but the inspector indicated this could be remedied by aerating the corn.[4] Therefore, there was sufficient evidence for the jury to find that the grain in each count, which had a loan value of at least $5,266.80 for Counts V and VI and as much as $16,402.50 for Count I, had a value of at least $500 when Klecan converted it to his own use by feeding it to his livestock. Consequently, the conviction of Orville Klecan is affirmed.

---

4. We note that the value of the grain to Klecan would remain at loan value, regardless of market value, if Klecan kept the grain in good condition as required by his agreement with the CCC. The ASCS county executive director testified at trial that if the market value of the grain was lower than the loan rate at the time the loan was due, instead of repaying the loan the farmer could forfeit the grain to the government and his loan obligation would be fulfilled. While we are not implying that the loan value is necessarily dispositive evidence of the value of the grain, it is proper evidence for the jury to consider.

McMILLIAN, Circuit Judge, dissenting.

I respectfully dissent. Because there is no evidence of value either above or below $500, I would reverse and remand the judgment of the district court with instructions to discharge the appellant. Section 714m(c), like its counterpart 18 U.S.C. § 641, is essentially a statute proscribing larceny, theft, and conversion. In both statutes the property value elements have historically created a division between felony and misdemeanor. In *Cartwright v. United States*, 146 F.2d 133, 135 (5th Cir. 1944), the court stated:

> It is, therefore, well settled that where the grade of larceny, and consequently the punishment, depend on the value of the property, it is essential that the value of the property defendant is charged with having taken be *alleged* and *proved.*

*Id.* (citations omitted) (emphasis added).

Added support for appellant's contention can be found in *United States v. Wilson*, 284 F.2d 407 (4th Cir.1960), in which the defendant was convicted of stealing seventy-two specified weapons. The statute under which defendant was convicted provided that whoever steals United States property will be imprisoned for not more than ten years, but that if the value does not exceed $100 the defendant shall not be in prison for more than one year. In *Wilson*, not unlike here, the Government failed to produce any evidence whatsoever as to the value of the seventy-two weapons. The court refused to take judicial notice that the seventy-two stolen rifles were worth more than $100. The court further noted:

> [a] fact which distinguishes a violation punishable by imprisonment for not more than one year from a violation punishable by imprisonment for ten years cannot be permitted to rest upon conjecture and surmise. In order to sustain the imposition of the higher penalty, it was as incumbent upon the Government to prove a value in excess of $100 as it was to prove the identity of the defendant as the perpetrator of the crime, or the ownership of the property.

*Id.* at 408. Here the government has not put into evidence anything to show the value of the goods at or near the time they were appropriated. Its entire case on this issue rests upon the value per bushel price shown to exist at the time the loan contract agreements were executed. This is not enough. In fact, the Government engaged in a very dangerous venture: In its case in chief, it put into evidence appellant's statement: "I fed the grain because it had all gone out of condition and ... could not be sold." As part of its case in chief, this statement of appellant on grain condition and value should have either been refuted by the Government or at least explained away. Otherwise, the rule appears to be that where an actor in his [or her] case-in-chief puts into evidence testimony favorable to the other party's case and totally at war with the actor's theory of the case, absent other evidence to the contrary, then, the actor is bound by that evidence and places himself [or herself] in a posture where a directed verdict is in order. *Luther v. Loewi & Co.*, 549 F.2d 1173, 1175 (8th Cir.1977).

In the present case, the only evidence as to value was that the grain was out of condition, had no value, and could not be sold. There was no contrary evidence upon which the jury could reach any other conclusion. If the Government argues that the grain must have been of some value because appellant fed it to his stock, it proves too much because the jury then assumed facts not in evidence. And if we assume some value, what value? Is it above or below $500? See *United States v. Ciongoli*, 358 F.2d 439 (3d Cir.1966) (Government must prove value); and *United States v. Harris*, 729 F.2d 441 (7th Cir.1984) (Value must be proved beyond a reasonable doubt).

The district court's declaration that the value description set forth in the statutes is not a substantial element of the crime of larceny or theft but is only an enhancement factor for sentencing is just wrong and completely ignores precedents and history! Moreover, the district court's instructions

to the jury were confusing and misstated the law. No options were given for jury findings on values either in excess of or less than $500.

Accordingly, I would reverse and remand the judgment with directions.