# Availability of the Judgment Fund for the Payment of Judgments or Settlements in Suits Brought Against the Commodity Credit Corporation Under the Federal Tort Claims Act

The Judgment Fund, the permanent appropriation established pursuant to 31 U.S.C. § 1304, is not available for the payment of judgments or settlements in suits brought against the Commodity Credit Corporation under the Federal Tort Claims Act.

December 5, 1989

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF AGRICULTURE

This memorandum responds to your office's request of February 9, 1989 ("February 9 Letter"), for the opinion of this Office concerning the availability of the permanent appropriation established pursuant to 31 U.S.C. § 1304 ("Judgment Fund") for the payment of judgments or settlements of suits under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, brought against the Commodity Credit Corporation ("CCC"), 15 U.S.C. § 714. For the reasons set forth below, we conclude that the Judgment Fund is not available for the payment of such judgments and settlements.

## I. Background

This question arose from a settlement reached in the case of *First National Bank of Rochester v. United States*, in the United States District Court, District of Minnesota, Third Division, Civil No. 3-87-571. In that case, you believed that the settlement should be paid from the Judgment Fund, but the General Accounting Office opined that the Judgment Fund could not be used. *See* Letter for Mary E. Carlson, Assistant United States Attorney, from Kenneth R. Schutt, Judgment Group Manager, General Accounting Office (May 24, 1988). Although we understand that this compromise settlement was ultimately paid out of CCC funds, your office has requested that we provide an opinion on the availability of the Judgment Fund generally to the CCC for payment of judgments or settlements that arise under the FTCA.

The Automatic Payment of Judgments Act (the "Judgments Act" or "Judgment Fund statute"), ch. 748, § 1302, 70 Stat. 678, 694-95 (1956)

(codified as amended at 31 U.S.C. § 1304), creates a permanent appropriation for the payment of certain types of judgments and settlements obtained against the United States. Before passage of the permanent appropriation, most judgments against the United States required specific appropriations. *See* 66 Comp. Gen. 157, 159 (1986). Judgments obtained under the FTCA or the Suits in Admiralty Act, 46 U.S.C. §§ 741-752, for example, required a submission to Congress for appropriation. This cumbersome process led to undue delay in payment, resulting in excess charges for interest. Congress enacted the permanent Judgment Fund to provide a simpler payment mechanism. *See* 66 Comp. Gen. at 159.

Section 1304 provides in pertinent part:

> (a) Necessary amounts are appropriated to pay final judgments, awards, compromise settlements, and interest and costs specified in the judgments or otherwise authorized by law when —
>
> (1) payment is not otherwise provided for;
>
> (2) payment is certified by the Comptroller General; and
>
> (3) the judgment, award, or settlement is payable —
>
> > (A) under section 2414, 2517, 2672, or 2677 of title 28;
> >
> > (B) under section 3723 of this title; ....

31 U.S.C. § 1304(a). Section 1304(a) thus imposes three requirements — all of which must be met — before a judgment or settlement may be paid out of the Judgment Fund. First, the payment must not be "otherwise provided for." Second, the Comptroller General must certify payment. And finally, the judgment must be payable pursuant to one of a number of specified sections in the United States Code.

The second requirement — the necessity for certification by the Comptroller General — does not appear to impose any additional substantive requirements on access to the Judgment Fund. The Comptroller General's certification follows from satisfaction of the other two requirements and completion of the necessary paperwork.[1] Thus, we need deter-

---

[1] The General Accounting Office itself takes this position, stating that the requirement of certification by the Comptroller General "is an essentially ministerial function and does not contemplate review of the merits of a particular judgment." General Accounting Office, *Principles of Federal Appropriations Law* 12-2 (1982) ("GAO Manual") (quoting B-129227, December 22, 1960) *See also* 22 Comp. Dec. 520 (1916); 8 Comp. Gen. 603, 605 (1929). In this case, however, GAO appears to have gone beyond its ministerial role by interpreting the law as it applies to the executive branch. Because we conclude that the "not otherwise provided for" requirement is not met in this case and the Judgment Fund is not available in any event, we need not address the serious constitutional questions raised by any GAO attempt to impose on the executive branch its own view of the Judgment Fund's availability. *See Bowsher v Synar*, 478 U.S 714 (1986) (Congress cannot constitutionally assign to the Comptroller General, an arm of Congress, a role in executing the laws).

mine only whether FTCA judgments or settlements against the CCC satisfy both of the two substantive requirements for Judgment Fund availability.[2]

## II. The CCC

By Executive Order No. 6340 President Roosevelt established the CCC in 1933 pursuant to the National Industrial Recovery Act, ch. 90, 48 Stat. 195 (1933). At its inception, the CCC was incorporated in Delaware, with its office and principal place of business in Washington. Although the United States owned all the capital stock of the CCC and the members of the board of directors, selected by the President, were officers in the federal government, the CCC operated as a private corporation. *See* Exec. Order No. 6340 (1933). The original articles of incorporation expressly state that the CCC would be treated like any other corporation under the laws of the State of Delaware.[3] Under the 1935 Corporations Code in Delaware, as under current law, corporations could sue and be sued, Del. Code. ch. 65, art. 1, § 2 (1935), and the corporate entity, rather than the directors or shareholders, was liable for judgments against the corporation unless the execution of such a judgment could not be satisfied. *Id.* § 51.[4]

The underlying liability of the corporation for judgments and settlements did not change as the CCC evolved from a presidentially-created, privately-incorporated entity to a statutory corporation. Between 1933 and 1948, when the CCC was reincorporated by statute, *see* the Commodity Credit Corporation Charter Act, ch. 704, 62 Stat. 1070 (1948) (codified as amended at 15 U.S.C §§ 714-714p) ("CCC Charter Act"), Congress enacted a series of laws "to continue the Commodity Credit Corporation as an agency of the United States, to revise the basis of annual appraisal of its assets, and for other purposes." S. Rep. No. 631, 78th Cong., 2d Sess. 1 (1944).[5] These laws enabled Congress to determine the economic viability of the CCC through commercial-type audits and

---

[2] Because we conclude that the FTCA actions brought against the CCC fail to meet the "not otherwise provided for" requirement, we express no opinion whether such actions meet the section 1304(a)(3) requirement of the Judgment Fund statute, which contains a specific reference to the Federal Tort Claims Act, 28 U.S C §§ 2672 & 2677.

[3] Article Third (m), Certificate of Incorporation, Commodity Credit Corporation, provides:
(m) In general, to have and to exercise all the powers and privileges conferred by the General Corporation laws of Delaware upon corporations, and to do all and everything necessary, suitable and proper for the accomplishment of any of the purposes or for the attainment of any of the objects or for the furtherance of any of the powers herein set forth, either alone or in association with other corporations, firms, agencies or individuals, and to do every other act or thing lawfully incident or appurtenant to or growing out of or connected with any of the aforesaid objects, purposes and/or powers.

[4] These provisions of the 1935 Delaware Corporations Code were identical to those in force in 1933 through other laws. *See* 35 Del. Laws 220 (1927); 1915 Del Corporations Code 1965.

[5] *See, e.g.,* Act of Jan. 26, 1937, ch. 6, 50 Stat. 5 (1937); Act of Mar. 4, 1939, ch. 5, 53 Stat. 510 (1939); Act of July 1, 1941, ch. 270, 55 Stat. 498 (1941); Act of July 16, 1943, ch 241, 57 Stat. 566 (1943), Act of Dec 23, 1943, ch 381, 57 Stat. 643 (1943); Act of Feb. 28, 1944, ch. 71, 58 Stat. 105 (1944), Act of Apr 12, 1945, ch. 54, 59 Stat. 50 (1945), Act of June 30, 1947, ch 164, 61 Stat. 201 (1947)

appraisals. As the Senate report to one of these statutes notes, "[t]he Commodity Credit Corporation's fiscal responsibility is vested in the Corporation and not in the individual fiscal agents. In other words, the fiscal agents are responsible to the Corporation, which in turn is liable to the Federal Government for the Government's investment in the Corporation." *Id.* at 2.

In 1948, the CCC was re-established as a statutory corporation. *See* CCC Charter Act, ch. 704, 62 Stat. 1070 (1948) (codified as amended at 15 U.S.C. §§ 714-714p). The CCC was constituted as a "body corporate" which "shall be an agency and instrumentality of the United States, within the Department of Agriculture." CCC Charter Act § 2 (codified at 15 U.S.C. § 714). Section 4(c) provided that, among the general powers of the corporation, it "[m]ay sue and be sued, but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Corporation or its property." *Id.* § 4(c) (codified at 15 U.S.C. § 714b(c)). Section 4(c) also provided for bench trials for suits brought against the CCC, and specified a statute of limitations for actions brought by or against the CCC. It specifically applied the FTCA to the CCC, including the 1-year statute of limitations applicable to FTCA claims. *See* S. Rep. No. 1022, 80th Cong., 2d Sess. 11 (1948); H.R. Rep. No. 1790, 80th Cong., 2d Sess. 10 (1948).

The CCC was also expressly provided with the authority to settle and pay its legal obligations. Section 4(j) granted the CCC the authority to "determine the character of and the necessity for its obligations and expenditures and the manner in which they shall be incurred, allowed, and paid." CCC Charter Act § 4(j) (codified at 15 U.S.C. § 714b(j)). Section 4(k) stated that the CCC "[s]hall have authority to make final and conclusive settlement and adjustment of any claims by or against the Corporation or the accounts of its fiscal officers." CCC Charter Act § 4(k) (codified at 15 U.S.C. § 714b(k)). The Senate Report explained that the power conferred by section 4(k)

> has been exercised by the Commodity Credit Corporation since its creation, and the power and its exercise were recognized by the Congress in the act of February 28, 1944 (15 U.S.C., 1940 ed., Supp. V, 713), in which it was provided that the Corporation should "continue" to have authority to make adjustment and settlement of its claims or the accounts of its fiscal officers.... A corporation such as the Commodity Credit Corporation, engaged in a multitude of commercial transactions, must be able expeditiously to adjust, compromise, and settle its claims in order efficiently to conduct its business.

S. Rep. No. 1022 at 12.

365

Moreover, just as the periodic pre-1948 evaluation and appraisal statutes reiterated the CCC's fiscal responsibility to the federal government, the 1948 statutory chartering of the CCC retained the pre-existing bases of the CCC's liability. Section 16 of the CCC Charter Act provided:

> The rights, privileges, and powers, and the duties and liabilities of Commodity Credit Corporation, a Delaware corporation, in respect to any contract, agreement, loan, account, or other obligation shall become the rights, privileges, and powers, and the duties and liabilities, respectively, of the Corporation. The enforceable claims of or against the Commodity Credit Corporation, a Delaware corporation, shall become the claims of or against, and may be enforced by or against, the Corporation.

CCC Charter Act § 16 (codified at 15 U.S.C. § 714n).

## III. Analysis

The Automatic Payment of Judgments Act was not designed to shift liability to the United States Treasury from agencies that had specific and express statutory authority to pay judgments and settlements out of their own assets and revenues,[6] but rather to eliminate the need for Congress to pass specific appropriations bills for the payment of judgments.[7] The creation of the Judgment Fund therefore did not disturb the prior practice, reflected in GAO decisions, that a government corporation would be required to pay judgments and settlements on personal injury claims where it has express authority to apply its own corporate funds to discharge such debts.[8] Under the terms of the Judgments Act, a corpora-

---

[6] See 66 Comp. Gen 157, 160 (1986) ("[I]t was never the intent of the judgment appropriation to shift the source of funds for those types of judgments which could be paid from agency funds... [T]he judgment appropriation was made available only where payment was 'not otherwise provided for' 31 U S C § 1304(a)(1). If this were not the case, agencies would be in a position to avoid certain valid obligations by using the 'back door' of the judgment appropriation, and to this extent their budget requests would present to the Congress an artificially low picture of the true cost of their activities to the taxpayer.").

[7] Congress viewed the previous method of satisfying judgment claims by specific appropriations as inequitable to judgment claimants, who were often forced to wait an unduly long time before receiving the money the Government owed them. Furthermore, the procedure resulted in unnecessary administrative expenses and interest costs to the Government. See Hearings on Supplemental Appropriations Bill, 1957, Before Subcommittees of the House Comm on Appropriations, 84th Cong , 2d Sess. 883-84, 888-89 (1956) See also 99 Cong Rec. 8793, 8794 (1953) (statements of Rep. Taber) (discussing a similar, unenacted proposal in title II of the Supplemental Appropriations Act, 1954).

[8] See, e.g., 25 Comp Gen. 685 (1946) In this decision, the Comptroller General concluded that "as the Congress has recognized the corporate existence of the Virgin Islands Company and the ordinance under which it was created, any judgment obtained against the company in a suit brought for damages arising out of [a tort] .. would be payable from funds derived from the operation of the company" 25 Comp Gen. at 686-87. A later decision by the Comptroller General confirmed that even if initially such judgments were paid by the Treasury, "it is our view that judgments of this nature should, at least ultimately, be paid from funds of the Corporation " 37 Comp. Gen 691, 695 (1958) (citing 25 Comp Gen 685 (1946)).

366

tion's authority to discharge its own liability means that a judgment against the corporation is "otherwise provided for" within the meaning of section 1304. Consequently, the Judgment Fund is not available to discharge the liability.

The history of the CCC confirms that Congress intended it to enjoy the authority to discharge its debts from its own funds. For the first fifteen years of its existence, the CCC operated largely in a private manner, and was responsible to the government for its liabilities. Like similar governmental corporations, it did not enjoy sovereign immunity, but was amenable to suit, including suits in tort. *See, e.g., Keifer & Keifer v. Reconstruction Fin. Corp.*, 306 U.S. 381 (1939). When Congress passed the CCC Charter Act in 1948 to reincorporate the CCC, it expressly provided that the CCC would remain exposed to legal liability. *See* CCC Charter Act § 4(c) (codified at 15 U.S.C. § 714b(c)). Further, the 1948 reincorporation also provided that the CCC "[s]hall determine the character of and the necessity for its obligations and expenditures and the manner in which they shall be incurred, allowed, and paid." CCC Charter Act § 4(j) (codified at 15 U.S.C. § 714b(j)). This language demonstrates that the CCC may determine the manner of paying its own "obligations" — *e.g.*, by sale of assets, by borrowings, or from current revenues. The next section of the statute makes explicit that the "obligations" over which the CCC has such authority include judgment claims. *See* CCC Charter Act § 4(k) (codified at 15 U.S.C. § 714b(k)) (providing the CCC with "authority to make final and conclusive settlement and adjustment of any claims by or against the Corporation"). Since the CCC thus has the authority to apply its own funds to the payment of "any" of its judgment claims, it follows that the CCC's obligations arising from FTCA claims may be paid from corporate funds. Accordingly, payment of such FTCA judgments against the CCC is "otherwise provided for" within the meaning of 31 U.S.C. § 1304(a)(1), and the Judgment Fund is not available for that purpose.

We recognize that the CCC reincorporation statute explicitly permits FTCA suits to be brought against the CCC.[9] Because the third requirement in the Judgment Fund statute, 31 U.S.C. § 1304(a)(3)(A), and the CCC Charter Act, 15 U.S.C. § 714b(c), both refer to the FTCA, Agriculture seems to argue that FTCA judgments against the CCC are payable out of the Judgment Fund.[10] That view is erroneous. We acknowledge that the third requirement of the Judgment Fund statute is satisfied simply by virtue of the fact that the judgment or settlement at issue arises from an FTCA suit. Nothing in the statute, however, suggests that FTCA suits necessarily sat-

---

[9] *See* 15 U.S.C § 714b(c)

[10] In the February 9 Letter, Agriculture stated "It is equally clear that Congress did not intend to exclude the CCC from the FTCA simply because it was given the authority to settle claims Such an interpretation would read out of the CCC Charter Act the express provision that the FTCA shall apply" February 9 Letter at 5-6

isfy the separate requirement that the payment of the settlement or judgment not be "otherwise provided for." Moreover, Agriculture's argument ignores the limited purpose served by including the FTCA reference in the CCC reincorporation statute. The legislative intent behind the statutory reference to the FTCA was merely to make it plain that such suits could continue to be brought against the reincorporated CCC,[11] and to emphasize that the statute of limitations for such actions would be the same for the CCC as for other governmental entities subject to FTCA suits.[12]

Furthermore, the statutory requirement that the CCC must "determine the character of and necessity for its obligations and expenditures and the manner in which they shall be incurred, allowed, and paid," CCC Charter Act § 4(j) (codified at 15 U.S.C. 714b(j)), would be anomalous if it gave the CCC a general responsibility for paying its legal liabilities out of its own funds, *except* where those arose under FTCA. Nothing in the language of the provision remotely suggests that the CCC would be required to defray its own liabilities on non-FTCA claims, but could look to the Judgment Fund to pay its liabilities under FTCA.

Agriculture also advances the argument that because the FTCA converts suits against government agencies and employees into suits against the United States, 28 U.S.C. § 2679(a), payment for CCC torts committed under the FTCA must be payable from general funds of the United States rather than the CCC.[13] But section 2679(a) merely creates a litigating convention which requires tort cases to be brought against the CCC in the name of the "United States" and subjects tort claims arising from CCC activities to the procedures, terms and conditions of the FTCA.[14] We do not believe that it shifts the source of funding FTCA liabilities from the CCC onto the United States Treasury.

---

[11] As we noted above, even prior to the enactment of FTCA, government-owned corporations were generally held not to enjoy sovereign immunity even from tort actions, absent clear congressional indication to extend such immunity to them In the 1948 rechartering of the CCC, Congress apparently wished to allay any suspicion that the CCC, as reconstituted, would thenceforward enjoy sovereign immunity.

[12] The Senate report reveals no intention to alter the responsibility of the CCC for judgments and other liabilities The report states in pertinent part:

> The 2-year limitation upon the right to bring suit against the Corporation represents a length of time believed fair to both the plaintiff and the Corporation In this connection, it is to be noted that the Federal Tort Claims Act recently passed by the Congress (60 Stat. 842) contains a 1-year statute of limitations .. Since the Federal Tort Claims Act is designed for uniform application to all Government agencies, including corporations, the applicability of the act to the Corporation is preserved. Consequently, there would be a 1-year statute of limitations applicable to claims cognizable under that act

S. Rep. No. 1022 at 11.

[13] Thus, Agriculture maintained in its request for our opinion: "CCC funds are not legally available to satisfy FTCA judgments or settlements arising out of ... CCC programs because such judgments are as a result of suits and claims brought against the United States " February 9 Letter at 6.

[14] *See, e g., United States v. Klecan*, 859 F.2d 570 (8th Cir. 1988); *United States v Johnson*, 853 F.2d 619 (8th Cir 1988); *United States v. Bisson*, 839 F.2d 418 (8th Cir. 1988), *United States v. Batson*, 782 F 2d 1307 (5th Cir.), *cert denied*, 477 U.S. 906 (1986). This convention was, of course, followed in the litigation that gave rise to this request for an opinion, *First National Bank of Rochester v United States*

Our conclusion that the Judgment Fund is not available to the CCC accords with the longstanding interpretation of the GAO, which has taken the view that government corporations should pay judgments from their own funds rather than the Judgment Fund. GAO's conclusion is "based in part on the 'otherwise provided for' reasoning and in part on the grounds that a judgment against a Government corporation is not really the same as a judgment against the United States." GAO Manual at 12-21 (citing *Waylyn Corp. v. United States*, 231 F.2d 544 (1st Cir.), *cert. denied*, 352 U.S. 827 (1956)).[15]

## IV. Conclusion

We conclude, therefore, that the Judgment Fund is unavailable for payment of judgments and settlements arising under the Federal Tort Claims Act against the Commodity Credit Corporation. The history and purposes of the Judgment Fund suggest that Congress intended payments to be made out of the permanent appropriation only when three requirements are met. In our view, the CCC may "otherwise" provide for payment of its FTCA judgments, and thus fails to meet a requirement for payment of a judgment out of the permanent appropriation.

WILLIAM P. BARR
*Assistant Attorney General*
*Office of Legal Counsel*

---

[15] Although the opinions of the Comptroller General, an agent of Congress, are not binding on the executive branch, we have recognized in a related context that in considering issues that "are directly pertinent to statutory restrictions on the use of appropriated funds, we believe it appropriate to accord considerable deference to decisions of the GAO." *Establishment of the President's Council for International Youth Exchange*, 6 Op. O L C 541, 547 (1982).